DUNN & YATES v. G. M. BRANNER.

A steamboat will be held liable for obligations incurred during a trip, whether the trip was authorized by the owners or not.

The bill of lading does not create the contract between the shipper and the common carrier ; it has been adopted as a convenient mode of establishing the contract, but is not an exclusive species of evidence.

A steamboat is responsible for money deposited by travelers, when the deposit is a necessary one.

A person receiving a voluntary deposit is liable only for gross negligence or fraud.

APPEAL from the District Court of the Parish of Natchitoches, *Chaplin*, J. *Hodge & Austin*, for plaintiffs and appellants. *J. G. Campbell* and *J. B. Smith*, for defendant.

COLE, J. Plaintiffs delivered to *Captain Newsom*, of the steamer Belle Gates, two packages of money ; one containing five thousand dollars, the other thirty dollars, to be carried from New Orleans to Shreveport.

At the arrival of the boat at the port of destination, the package of five thousand dollars was missing. *Newsom* was then arrested on the charge of having embezzled it.

Having signed a bill of lading for the package, he was liberated. Plaintiffs then being in possession of the bill of lading, caused the boat to be sequestered. *Bryan*, the owner of the Belle Gates, being absent from the State, his son-in-law, the defendant, in order to relieve the boat from seizure, entered into the following agreement :

"STATE OF LOUISIANA, PARISH OF CADDO.

" Be it remembered hereby, that we, the undersigned, have this day fully adjusted all things in relation to the seizure of the steamer Belle Gates, for the loss of deposit of five thousand dollars by *Dunn & Yates*, for which she was seized. The terms of this adjustment are as follows : *Dunn & Yates* agree to take the bills of the steamer Belle Gates, one for the sum of two thousand five hundred and twenty-two dollars and twenty-two cents, at forty days from date, and one for two thousand five hundred and thirty-three dollars and thirty-one cents, at sixty days after date, both payable at the counting house of *John F. Wyche & Co.*, New Orleans, Louisiana, to *Dunn & Yates* or order. These bills are taken by *Dunn & Yates* in full discharge of their claim ; and the said *George M. Branner*, in consideration of the discharge of the seizure of said boat by *Dunn & Yates*, hereby agrees that he will and does guarantee the payment of said bills at maturity. It is further agreed, that *Dunn & Yates* will pay all the court costs of the seizure of said boat Belle Gates.

January 1st, 1857.

(Signed)                                    DUNN & YATES,
                                            GEORGE M. BRANNER.

Attest : SAM. FORD, W. H. PROBST."

In accordance with this convention, the plaintiffs at once discharged the sequestration, and afterwards dismissed the suit at their cost ; and two notes were given, signed by *Captain Newsom,* for steamer Belle Gates and owner, for the amounts specified in the agreement.

These notes were protested at their respective maturities for non-payment, and the present suit was instituted against *Branner,* upon the guaranty contained in the agreement.

There was judgment for defendant and plaintiff has appealed.

The grounds of defence of defendant, to free him from liability, will be briefly reviewed.

1. It is contended by defendant, that *Newsom,* during the absence of *Bryan,* took possession of the Belle Gates, without authority, and received a cargo at New Orleans for Shreveport.

Even, if it be conceded, *Newsom* was not authorized by any express power, to run the boat on that trip ; still *Bryan* had left *Newsom* with such control over her, as to enable him to start her on a voyage. *Bryan,* having thus placed it in his power, to deceive the public, ought not to complain, if his boat be held liable for the obligations incurred by her during the trip.

2. Appellee avers, that by the instigation and fraud of plaintiffs, the bill of lading was fraudulently signed by *Newsom,* to liberate himself from arrest ; and was executed at Shreveport, after the completion of the voyage, and ante-dated to the date of the departure of the boat from New Orleans.

That on the bill of lading thus illegally obtained, the boat was sequestered.

Under the belief it was a legal seizure for the breach of a lawful contract, he entered into the agreement for the purpose of releasing the boat ; and · when the facts were communicated to him, he notified the plaintiffs to proceed against the boat. Defendant relies on Articles 1814, 1835, 1840, and other provisions of the Code on error and fraud.

The record does not sustain the averment of appellee, that he was not cognizant of the ante-dating of the bill of lading, and of the other facts of the case ; on the contrary, it shows he was probably acquainted with all of them.

*Probst,* a witness of defendant, says, he feels confident that defendant knew all the facts before he signed the guaranty.

The responsibility of appellee exists, whether the facts of the case were known to him or not, because the boat was liable for the restitution of the lost package, and the security of defendant was, therefore, to guaranty a legal claim.

It does not appear clearly, if the plaintiffs were to pay the boat for the transportation of the money or not, although it may perhaps be inferred from the evidence, that compensation could have been demanded and recovered.

*McClelland,* the Clerk of the boat, testifies : " That on the evening of the 20th of December last, while the said boat was lying at New Orleans, *Mr. Dunn,* of the firm of *Dunn & Yates,* came on board, and said to affiant, that he had two packages of money, one containing five thousand dollars, the other thirty dollars, which he, *Dunn,* wished to *ship* on said boat. That affiant stated to him, that he did not have the key ; to wait a few minutes, that *Captain Newsom* would be on board ; that a few minutes after, *Captain Newsom* did come on board and took the two packages, and put them in the safe."

The words " to ship," creates the presumption that plaintiffs were to pay for the transportation of the packages.

That the bill of lading was not delivered until the termination of the voyage, does not deprive the steamer of the right to exact the usual charge; the bill of lading does not create the contract between the shipper and the common carrier. It has been adopted as a convenient mode of establishing the contract; but is not the exclusive species of evidence. If the boat were to have been compensated, the obligations of the parties would then have been controlled, not by the law of deposit, but of hiring. C. C. 2900.

The boat, in that event, would be responsible; for no justifiable excuse for the loss has been shown.

Defendant avers, also, that no liability exists on his part, even if the facts relative to the loss had been known by him; because the money was delivered as a voluntary deposit, and transported without charge.

Conceding no compensation was to have been received for the transportation of the money, the boat is nevertheless responsible.

Art. 2722 of the Code declares, that carriers and watermen are subject, with respect to the safe keeping and preservation of the things entrusted to them, to the same obligations and duties, which are imposed on tavern keepers in the title of *deposit and sequestration.*

Arts. 2936 and 2937 of the Code, under the title of "*deposit and sequestration,*" provide, that an innkeeper is responsible, as depositary, for the effects brought by travelers who lodge at his house; the deposit of such effects is considered as a necessary deposit; also, for the effects brought by travelers, even though they were not delivered into his personal care: provided, however, they were delivered to a servant, or person in his employment.

Art. 2938 declares, the innkeeper is responsible, if any of the effects be stolen or damaged, either by his servant or agents, or by strangers going and coming in the inn.

It thus appears, innkeepers are responsible for what are considered as necessary deposits; and consequently, by Art. 2722, the common carrier would be liable, if the deposit of the packages were necessary.

That it was a necessary deposit is clear, for plaintiffs could not safely or prudently have retained them in his custody during the voyage from New Orleans to Shreveport.

Art. 2908 of the Code, requires the depositary to use the same diligence in preserving the deposit, that he uses in preserving his own property.

Although the most rigorous diligence is not incumbent upon him, who has received a voluntary deposit, for which he was to receive no reward for preserving it. Art. 2909 C. C. Yet he is liable for gross negligence or fraud.

Now, if one has five thousand dollars which belongs to himself, he would, with ordinary prudence, be able to explain the probable mode of its loss, if it should occur. The depositary then being obligated to use the same diligence in preserving the deposit that he uses in preserving his own property, ought to be able to show in what way the voluntary deposit was lost, and that it disappeared without any fraud or gross negligence on his part.

But no reasonable explanation has been offered to show, that the loss of plaintiff was not occasioned by the fraud or gross negligence of the officers of the boat.

The steamer is therefore responsible, and the seizure thereof was consequently based on a legal obligation.

Defendant was not then in error of fact or law, nor the victim of fraud, in guaranteeing the notes on the hypothesis of the liability of the boat.

It may be stated, that the guaranty of the notes may have been induced not only by the desire of appellee to aid his son-in-law, but also by the motive of personal interest, arising from partial or entire ownership of the Belle Gates.

*Probst* testifies, that " to the best of my knowledge she belonged to *Leon Bryan*, though I am not certain of it."

It is not positive that *Bryan* was the sole proprietor ; the evidence, however, establishes that appellee acted as Captain of the Belle Gates in the spring of 1856, prior to the loss of the money, also subsequently ; and continued in that capacity from about the 1st of January until the 10th of February. 1 Rob. 410 ; 9 La. 84 ; 5 An. 604, and 11 An. 704.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed ; that plaintiffs recover of defendant the sum of two thousand five hundred and twenty-two dollars and twenty-one cents, with five per centum interest thereon from the 13th of February, 1857, until paid ; also, the further sum of two thousand five hundred and thirty-three dollars and thirty-one cents, with five per centum interest thereon, from the 5th of March, 1857, until paid, and the costs of both courts. And it is further decreed, that the recourse of defendant be reserved against all parties who may be liable to him for the reimbursement of the amount of this judgment, if any such recourse he may have.

SPOFFORD, J., concurring. I concur in the judgment without expressing an opinion as to the liability of the steamer Belle Gates, or of any person for her, other than the defendant *Branner*.

For, if he was not himself an owner, he undertook the business of the owners in effecting a compromise of the suit, in which the boat was sequestered. He cannot question his own authority. And even if he had none, he is personally bound for all the consequences of his assumption. C. C. 2979.

He procured the dismissal of a pending law suit, and the release of the boat which he commanded both before and afterwards, by leading the plaintiffs into a compromise. This transaction, in which he figures as a principal, he now seeks to repudiate on the ground of error. There is no evidence that when he made the compromise, he was ignorant of any of the material facts ; indeed, there is reason to suppose he knew the facts of the case as well then, as now. And a contract of this kind cannot be assailed by a party to it, on account of any error in law. C. C. 1840, No. 2, 3038, 3045.