## HAWKINS v. HUBBARD.

1. An appeal from a judgment and from an order overruling a motion for new trial, made after judgment, on the ground of insufficiency of the evidence to sustain the verdict, will not be dismissed as a double appeal. Hackett v. Gunderson, (S. D.) 47 N. W. Rep. 546, distinguished.
2. The contract of pledge, independent of any agreement, collateral or implied from the circumstances of the case, is that the pledgee shall hold the thing pledged to secure the performance of the thing promised to be done.
3. The use of the property pledged, either as compensation for its keeping or otherwise, unless consented to by the pledgor, is forbidden by statutory provisions, more particularly noticed in the opinion.

(Syllabus by the Court.   Opinion filed March 16, 1892.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action to recover the value of certain personal property. Judgment for plaintiff.   Defendant appeals.   Affirmed.

The facts are stated in the opinion.

*C. O. Bailey*, *W. H. Stoddard* and *J. H. Voorhees*, for appellants.

A single appeal can be taken from the judgment and order denying a new trial. Fry v. Bennett, 16 How. Pr. 385; Cook v. Co., 18 N. Y. 229; Lavalle v. Skelly, 90 N. Y. 546; Thurber v. Railroad, 60 N. Y. 326; Schmidt v. Cowperthwait, 66 How. Pr. 477; Dickson v. Railroad, 47 N. Y. 507; Marzion v. Pioche, 8 Cal. 522; Carpenter v. Williamson, 25 Cal. 154; Hastings v. Halleck, 13 Cal. 207; Towdy v. Ellis, 22 Cal. 659; Rush v. Casey, 39 Cal. 339; Jacks v. Buell, 47 Cal. 162. In Minnesota the evidence can be reviewed by the appellate court without the necessity of a motion for a new trial. Ins. Co. v. Allis, 24 Minn. 75; Chittenden v. Bank, 27 Minn. 143.

A pledgee has a right to reasonable use of the thing pledged. 4 Lawson R. R. & Pr., 1761; 5 Field's Lawyer's Briefs, § 97; Story on Bailments, § 89; Edwards on Bailments, § 65; 39 Wis. 146; Lawrence v. Maxwell 53 N. Y. 19; Newton v. Fay, 10 Allen, 505; Thompson v. Patrick, 4 Watts, 414.

The verdict is excessive and should be set aside. Stearns v. Marsh, 4 Denio, 227; 1 Reeve's His. Eng. Law, 161; Jarvis v. Rogers, 15 Mass. 389; Story on Bailm. 2nd Ed. §§ 315, 349.

*Joe Kirby*, for respondent.

The rights of the bailee to use property must be left to the agreement of the parties in the absence of statute. Story on Bailm. § 89; Jones on Bailm. § 81-2; § 1047 Civil Code; Everett v. Buchanan, 2 Dak. 249, 271.

KELLAM, P. J. Some time prior to the commencement of this action respondent was the owner of two horses, a wagon, and a set of double harness, upon which various persons held chattel mortgages. In the fall of 1887 he turned them over to one Kelly, as it would seem from the evidence to be kept for him. Subsequently the property came into the possession of appellant, —precisely why or how is not clearly disclosed, except that appellant appears to have paid certain mortgages, under one or more of which the property was advertised to be sold, and thus to have gotten possession of the same. From this point on there is conflict as to the facts, appellant claiming an agreement with respondent by which he was to keep the property as security for the advances so made, and respondent denying such agreement. Respondent brought this action against appellant, after an alleged demand and refusal, for the value of the property. The case was tried by a jury, and upon verdict judgment was rendered against appellant. After judgment appellant made a motion for a new trial, which was denied. He then appealed from the judgment and from the order refusing new trial. Respondent moves to dismiss the appeal, on the ground that one appeal does not lie from a judgment and an order refusing a new trial; that such is a double appeal, and is condemned by this court in Hackett v. Gunderson, (S. D.) 47 N. W. Rep. 546, and by the supreme court of Wisconsin in several cases cited. Hackett v. Gunderson does not control this case, because the facts are essentially different, and because the facts that made the rule a proper one in that case do not exist in this case. In that case the appeal was from two entirely separate and independent orders, having no connection with or

affinity for each other,—one overruling a motion to set aside the verdict, and for new trial, on the ground of insufficiency of the evidence, made on bill of exceptions; the other denying a motion for new trial upon the ground of newly-discovered evidence, made on affidavits. In that case both motions were made and decided before judgment, and an appeal from the judgment would have brought both orders for review. In this case the motion was made after judgment, and an appeal from the judgment alone would not have brought up the order for review. In Wisconsin, where the cases come from which are cited in support of this motion to dismiss, when the motion for new trial is made before judgment, error in denying the motion becomes error in the judgment, and upon that theory, and for reason, is reviewable on appeal from the judgment alone; the appeal from the judgment being intended to supersede the appeal from the order. Victor S. M. Co. v. Heller, 41 Wis. 657. But where the motion is made after judgment, as in the case at bar, this cannot be, for an appeal from the judgment cannot bring up for review errors occurring after the judgment was rendered. Morris v. Niles, 67 Wis. 341, 30 N. W. Rep. 353. This court will not review the question of the sufficiency of the evidence to support a verdict or finding until the question has been first presented to the court below by motion for new trial. Pierce v. Manning (S. D.) 51 N. W. Rep. 332.

In this case one of the errors complained of is that the evidence did not justify the verdict, A motion for new trial was made on that ground and overruled, and the appeal is from the judgment and the decision on such motion. To dismiss this appeal because double would mean that two separate appeals should have been, and in such cases must be, taken. The question could not be reviewed on appeal from the judgment, because the motion was not made until after judgment; and an appeal from the decision on the motion for new trial, if reversed, would still leave the judgment in force, with a doubtful power in the court below to disturb it, after the length of time that would usually be required to appeal and have decided by the supreme court the decision on the motion for new trial. We

think this conclusion is not inconsistent even with the Wisconsin cases prior to their law of 1883, expressly authorizing such appeals to be joined in one notice; and certainly is in line with the decisions of other states, notably California, whose practice ours more nearly follows, perhaps, than that of Wisconsin. Carpenter v. Williamson, 25 Cal. 154; Winter v. McMillan, 87 Cal. 256, 25 Pac. Rep. 407. The motion to dismiss is denied.

As to the merits the evidence is conflicting. Appellant's theory (and there is evidence tending to support it) is that he took the property, which was then about to be sold on mortgage, in the spring of 1888, from the possession of Norton, a mortgagee, and paid up the mortgage in order to assist respondent, who was then out of health and in financial difficulty; that he immediately advised respondent of what he had done, who seemed pleased with and acquiesced in the arrangement, and requested appellant to pay other claims against the property, and hold the same until he could reimburse him, which, upon such request, appellant did, to a considerable amount, and that none of the money so paid has been refunded or tendered; that, while so holding the property, he used it moderately in his business as a compensation for its keeping.

Respondent, on the other hand, claims (and there is evitending to support the claim) that he never authorized appellant to take possession of the property, and never subsequently agreed to or ratified the same; that he never requested appellant to pay any money for him, either on mortgages on the property or otherwise; and never agreed or consented that he might hold the property until moneys so advanced were repaid, and that he never authorized appellant to use the property. Two issues of fact were thus presented to the jury: Was appellant authorized by respondent to hold this property until his advances were paid? And, if so, had his use of the property while so holding it been such as to constitute a conversion of it? A negative answer to the first or an affirmative answer to the second of these questions would account for a verdict in favor of respondent. The jury may have found that appellant

had full authority from respondent to hold the property as security for his reimbursement, but that his use of it was so inconsistent with the rights of respondent as owner and pledgor as to charge appellant with a conversion of it; so that it was important that the jury be correctly instructed as to what use, if any, appellant might innocently make of the property. Appellant does not claim that he had any right to use this property, other than that the law gives to every pledgee, unaffected by any agreement or understanding with the pledgor. The contract of pledge, independent of any agreement, collateral or implied from the circumstances of the case, is that the pledgee shall hold the thing pledged to secure the performance of the thing promised to be done. The contract directly covers nothing more than the holding of the property as security; but, as usual, there is implied that each party shall treat the other and the pledge with good faith, and so the pledgee is bound to take reasonable care of the thing pledged, and thus and to that extent protect it from deterioration; and this, depending upon the character of the property pledged, may mean that more shall be done than that the property shall be simply held or kept by the pledgee. Cows may be required to be milked and horses to be used in exercise, and in such cases this may and should be done; not to compensate the pledgee for their keeping, but because under the contract of pledge it is the right of the pledgor and the duty of the pledgee, as a means of protecting the property from loss and deterioration. Appellant, however, insists that it is the right of the pledgee to use the property pledged sufficiently to compensate himself for the expense of keeping the same, and refers to Thompson v. Patrick, 4 Watts, 414, which seems to be an authority for that claim. Story, however, in his work on Bailments, (Section 89,) states the law somewhat differently. He says: "In general it may be laid down that the depositary has no right to use the thing deposited unless there is an express or implied consent on the part of the depositor;" and again, in Section 90, he says: "The best general rule on the subject (for every case must be governed by its own particular circumstances) is to consider

whether there may or may not be an implied consent on the part of the owner to the use. If the use would be for the benefit of the deposit, the assent of the owner may well be presumed; if to his injury, or perilous, it ought not to be presumed; if the use would be indifferent, or other circumstances do not incline either way, the use may be deemed not allowable."

But we are inclined to the opinion, against the argument of appellant, that our Civil Code is designed to cover and control this whole subject. Section 4403, Comp. Laws, is: "A pledgee * * * assumes the duties and liabilities of a depositary for reward." We do not readily find elsewhere in the Code the expression, "depositary for reward;" but Section 3657 says: "A deposit may be voluntary or involuntary, and for safe-keeping or exchange." This section is general, and would seem to be intended to cover all kinds of deposits. A pledge is not an involuntary deposit, (Section 3659,) nor a deposit for exchange; for Section 3662 defines such deposit to be "one in which the depositary is only bound to return a thing corresponding in kind to that which is deposited," while a deposit for keeping is "one in which the depositary is bound to return the identical thing deposited." Section 3661. A pledge, therefore, is like a "deposit for keeping." A "deposit for keeping" includes both a "gratuitous deposit" (Section 3667) and a "deposit for hire," (Section 3681;) but in neither may the depositary "use the thing deposited, or permit it to be used, for any purpose, without the consent of the depositor." Section 3671. It is provided by Section 3670 that "a depositary of living animals must provide them with suitable food and shelter," etc.. and by Section 3669, that the depositor must indemnify the depositary therefor; but whether such claim for indemnity is personal against the depositor, or constitutes a lien on the deposit is not stated. There is, however, nothing in the statute to suggest the right of the depositary to reimburse himself for such expenses by the use of the deposit, but, on the contrary, such use is forbidden by said Section 3671. The trial court instructed the jury in accordance with these views. The instructions asked for by appellant, but refused by the court,—

and upon which refusal rests appellant's assignment of error, —were to the effect that, if appellant was properly holding this property as a pledge, and was at a charge for its keeping, he had a right to use the same in a reasonable manner as a recompense for its keeping, and that there was an implied agreement that he might so use it. For reasons which we have endeavored to state, we think such instructions were properly refused. The only part of the court's charge to the jury to which exception was taken was as follows: ''I would say that the wagon was of such a character it would probably not have to be used in order to keep it in repair. You know regarding it.'' This, of course, would ordinarily be a question of fact for the jury; but the suggestion of the court was so obviously true, and so within the common knowledge of all, court and jury alike, that appellant' could have suffered no prejudice therefrom.

It is further objected that the verdict is excessive. It was for $375.96. There was evidence tending to show that the property was worth something over $500. Appellant claims that he was clearly entitled to recoup the several amounts he had paid out to take up liens against the property, and that it is evident, from the size of the verdict, that the jury entirely ignored such claims; but whether appellant was entitled to recoup these amounts is not a legal question before us, for the reason that the court had definitely instructed the jury that, unless such payments were made at the request of respondent, he would not be bound to recognize or repay them, and that they would create no legal obligation against him; and this must be regarded as the law of the case, for it was not objected to. Respondent testified very positively that he never authorized or requested appellant to make these payments. The jury might have so found, and, so finding, had then only to agree upon the value of the property as their verdict. Appellant did not assert his claim upon the property, or his right to reimbursement, as the assignee, legal or equitable, of the various liens paid, but as the immediate pledgee of respondent, as security for moneys advanced at his request. The jury hav-

ing found, as they might, under the evidence, that no moneys were so advanced, there would be, under the instruction of the court, nothing to be recouped. We discover no error justifying a reversal of this judgment, and it is affirmed.