## METTEL *et al.* v GALES *et al.*

1. Since no appeal lies until an order has been entered as a permanent record in the trial court, an appeal from an order denying defendant's motion for a new trial, taken nine months before the entry of such order, cannot be considered.

2. Where the undisputed evidence showed that plaintiffs had not compromised their claims against defendant for sinking a well, as alleged in defendant's answer, an instruction in relation thereto, erroneous, as an abstract proposition of law, was harmless.

3. Comp. Laws § 3593, provides that a contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise. Section 3576 declares that an executed contract is one the object of which is fully performed. Plaintiffs agreed in writing to use 4½-inch piping in sinking a well for defendant, for which they were to receive $1,500. The agreement provided that, if it should be impossible to use piping of the size stipulated, plaintiffs might use 3-inch piping, in which case they should receive $950. Thereafter, on its becoming impossible to use 4½-inch piping for the entire well, the parties orally agreed to the substitution of piping of sizes other than those previously agreed, for a part of the distance, for which defendant was to pay $1,500. *Held,* that plaintiffs could not recover for a balance due under the conract as modified on the completion of the well, since the parol modification was executory merely.

(Opinion filed March 2, 1900.)

Appeal from circuit court, Aurora county. Hon. FRANK B. SMITH, Judge.

Action by John Mettel and others, co-partners, against Mike Gales and others, to recover a balance alleged to be due, for sinking and completing an artesian well. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendant Mike Gales appeals. Reversed.

*H. F. Fellows,* for appellant.

*A. H. Henneous* and *S. H. Bakewell,* for respondents.

FULLER, P. J. Before proceeding to the merits of this case, we will dispose of a motion to dismiss the appeal for the following reasons: "(1) That a copy of the undertaking on appeal was never served on the respondents, or their attorneys

or either of them; (2) that the order denying a new trial herein was not entered, and made a permanent record of the court below, until after this appeal was taken." By respondents' additional abstract we are referred to the record, which shows due admission of service on the back of the original undertaking, and the objection made to the copy served on the adverse party is merely technical, and without merit. We further find from an examination of the record that on the 18th day of May, 1898, the appeal was taken from the judgment and order overruling a motion for a new trial, and that such order was never entered until nine months thereafter. That no appeal lies until the judgment or order has been entered as a permanent record of the court below, and that no question as to the sufficiency of the evidence to justify the verdict is presented for review when the order denying a new trial, made after judgment, was not so entered, has been uniformly held. Pierce v. Manning, 2 S. D. 517, 51 N. W. 332; Hawkins v. Hubbard, 2 S. D. 638, 51 N. W. 774; Plow Co. v. Bellon, 4 S. D. 384, 57 N. W. 17; Evenson v. Webster, 3 S. D. 382, 53 N. W. 747; Gade v. Collins, 8 S. D. 322, 66 N. W. 466; State v. Lamm, 9 S. D. 418, 69 N. W. 592; Sinkling v. Railway Co., 10 S. D. 560, 74 N. W. 1029; Chamberlain v. Hedger, 10 S. D. 290, 73 N. W. 75; Coburn v. Board, 10 S. D. 552, 74 N. W. 1026; Machine Co. v. Skau, 10 S. D. 636, 75 N. W. 199; Bourne v. Johnson, 10 S. D. 36, 71 N. W. 140; Parrish v. Mahany, 10 S. D. 276, 73 N. W. 97; Haggarty v. Strong, 10 S. D. 585, 74 N. W. 1037. In Martin v. Smith, 11 S. D. 437, 78 N. W. 1001, the proposition is discussed, and the decisions of other states having similar statutory provisions on the subject of appeals are collated. As the case must be treated as though no appeal from

the order denying a new trial was attempted, the sufficiency of the evidence to justify the verdict will not be considered. Under the first provision of the original written contract made the basis of this action respondents were bound, in consideration of $1,500, to sink, encase, and fully equip an artesian well for appellant, Mike Gales, as follows: "The size of the well must be four and one half ($4\frac{1}{2}$) inches, and wrought iron pipe of good quality must be used, and said pipe to be a continuous string from top to bottom, with tight joints, which shall be connected by good and substantial couplings; and the workmanship thereof shall be performed in workmanlike manner." Reserving to Mike Gales the right to have an expert determine the possibility of completing the well as above specified, the following stipulation was made a part of the original contract: "It is further agreed between the within contracting parties that, should it be impossible to furnish this well with $4\frac{1}{2}$-inch piping, said second party is permitted to finish this well with three (3) inch casing, in which case said first party agrees to pay for the within contracted well nine hundred and fifty dollars ($950.00)." After drilling 830 feet, where a very strong flow of water was obtained, and at a time when the well contained 795 feet of $4\frac{1}{2}$-inch casing resting on solid rock, placed there in strict conformity with the first provision of the foregoing contract, it is alleged, and the evidence tends strongly to show: "That shortly after the said artesian flow of water was obtained, and while the said well was in the condition last above described, the plaintiff and the defendant Mike Gales entered into an oral and mutual agreement whereby the written contract above set out was modified and changed, by the terms of which agreement the plaintiff agreed to case the lower or bot-

tom 35 feet of said well with 3¾-inch perforated casing, and the defendant Mike Gales agreed and promised to accept the 3¾-inch casing in lieu of 4½ inch casing for the said 35 feet at the bottom of the said well; that, after the said oral agreement was made, the plaintiff, with the assistance of the defendant Mike Gales, cased the said bottom 35 feet of said well with 3¾-inch perforated casing, being the same kind as agreed upon in the said oral agreement, and the said defendant Mike Gales accepted the said 35 feet of 3¾ inch casing for the bottom 35 feet of said well in lieu of the 4½ inch casing described in the written contract above, and has constantly and continuously used and appropriated the water from said well for all purposes, including domestic and irrigating purposes; that the plaintiff and the defendant entered into an oral agreement on or about the time flow of water as aforesaid was reached, by the terms of which the plaintiff agreed to take out of the said well the top 140 feet of the said 795 feet of 4½-inch casing, and leave in lieu thereof as and for the casing of said 140 feet a string of casing 6 inches in diameter, commencing at the top of the said well, and running down into the same 210 feet, overlapping the 4½-inch casing 70 feet on the outside thereof, and the defendant Mike Gales agreed to accept the said 6 inch casing placed in said well as aforesaid in lieu of the 4½ inch casing described in said contract; that the plaintiff cased the said 140 feet of the well at the top thereof with the said 6-inch casing as per said oral agreement, and the defendant Mike Gales accepted the said 6-inch casing in lieu of the 4½-inch casing described in the written contract, and accepted it according to and by reason of the said oral agreement." It is conceded that respondents have received from appellant $1,225 of the $1,500 claimed, but

he denies specifically that the written contract was ever modified, and avers that by reason of a failure to comply therewith respondents were entitled to receive in full settlement for the well $950, and no more. It is further alleged in the answer: "That after the plaintiffs finished working on said well, and had performed all work thereon ever performed by them, there arose a dispute and controversy between the plaintiffs and the defendant Mike Gales as to how much the plaintiffs were entitled to receive as pay for the sinking and making of said well as done and performed by them, the plaintiffs claiming that the sum of fifteen hundred dollars was due to them for the making of said well, and the defendant Mike Gales claiming that the plaintiffs were entitled to only the sum of nine hundred and fifty dollars therefor; whereupon, to avoid trouble, and possible litigation, and before the commencement of their action, the plaintiffs and the defendant Mike Gales made a full and complete settlement of all matters between them relating to the making and sinking of said well. The defendant Mike Gales, in the making of said settlement, offered, tendered, and delivered to the plaintiffs the sum of twelve hundred and twenty-five dollars, including all sums of money already paid to the plaintiffs on account of said well by the said defendant. The said plaintiffs agreed to accept and did accept and receive from the said defendant the said sum of twelve hundred and twenty-five dollars in full satisfaction and discharge of the sum of money due the plaintiffs from the defendant for the sinking and making of said well, and in full and complete satisfaction and extinction of all obligations and liabilities therefor, and all things in the plaintiffs' complaint alleged." As the undisputed testimony—including that of appellant himself—conclu-

sively proves that no such settlement or agreement to compromise for $1,225, or any other sum, was ever made, the court's instruction with reference thereto, though erroneous as an abstract proposition of law, did no more than take the question from the jury, and appellant's assignment of error predicated upon that portion of the charge presents nothing to justify a reversal.

The remaining point is whether the court committed error in refusing to give the following instruction, proposed by counsel for appellant at the conclusion of all the testimony: "The jury are instructed to return a verdict for the defendant, because the contract in this case, being in writing, cannot be altered except by a contract in witing, or by an executed oral agreement; and there is no evidence of either a written consent to alter or of an executed oral agreement to alter it." Without giving the testimony of the various witnesses in detail, it is safe to conclude that there is substantial evidence to sustain every allegation of the complaint relating to the alleged subsequent verbal agreement modifying the original written contract. As the evidence shows that it was impossible to use a continuous string of $4\frac{1}{2}$ inch casing from the top to the bottom of the well, respondents had a clear right, under the written contract, to use 3 inch casing, and to collect, in that event, $950 for the well. While there is testimony tending to prove that appellant, instead of having the well encased with this 3 inch material, permitted the use of some 6 inch and some $3\frac{3}{4}$ inch wrought iron piping, and orally agreed to accept the same, it does not affirmatively appear that he agreed to accept the well, and pay the sum of $1,500 therefor. If we assume that he did in a formal manner orally accept the well as an entirety, and

agree to pay $1,500 for it, his failure to perform in that regard defeats this action, because "a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Comp. Laws, § 3593. "An executed contract is one, the object of which is fully performed. All others are executory." *Id.* § 3576. An executed contract has the qualities of a chose in possession, while an executory contract is nothing but a chose in action,—the mere right to something arising from a contract, express or implied, which cannot be enforced without resort to legal process. In 11 Am. & Eng. Enc. Law, p. 582, the author says: "An executed contract is one in which the object of the contract is performed. A debt paid is a contract executed." Bouvier defines such contract thus: "Executed contracts are those in which nothing remains to be done by either party, and where the transaction has been completed, or was completed at the time the contract or agreement was made; as, where an article is sold and delivered, and payment therefor is made on the spot. Executory contracts are those in which some act remains to be done,—as, when an agreement is made to build a house in six months; to do an act before some future day; to lend money upon a certain interest, payable at a future day." At page 824 (1st Ed.) 3 Am. & Eng. Enc. Law, it is stated that: "Executed contracts are not properly contracts at all. The term is used to signify rights in property which have been acquired by means of contract. The parties are no longer bound by a contractual tie;" and the following illustration is given: "Thus, a man agrees to buy a horse of another, pays the price, and takes the horse to his own stable. Here a contract has taken place, but the buyer has become the owner of the horse, and the seller has become

640        Mettel *et al. v.* Gales *et al.*

the owner of the money. The transaction is at an end; the contract is executed." Chief Justice Marshall, speaking for the United States supreme court in Fletcher v. Peck, 6 Cranch 87, 3 L. Ed. 162, uses the following language: "An executory contract is one in which a party binds himself to do or not to do a particular thing. A contract executed is one in which the object of the contract is performed; and this says Blackstone, differs in nothing from a grant." According to the common-law doctrine, parol evidence was not admissible to alter a written executory contract, and our legislature, actuated by principles of public policy, has made the rule statutory. In the following cases it was held that parol evidence of an executory agreement was inadmissible, under the statute, to vary the terms of a written contract: Manufacturing Co. v. Galloway, 5 S. D. 205, 58 N. W. 565; Lewis v. Railroad Co., 5 S. D. 148, 58 N. W. 580; Strunk v. Smith, 8 S D. 407, 66 N. W. 926; Bank v. Kellogg, 4 S. D. 312, 56 N. W. 1071; Washabaugh v. Hall, 4 S. D. 168, 56 N. W. 82. Our conclusion, therefore, is that the motion of counsel to direct a verdict for appellant should have been granted. The judgment appealed from is reversed, and the case remanded for further proceedings not inconsistent with the views herein expressed.

Haney, J., concurs in the conclusion that the judgment should be reversed.