WOODWARD v. ROYAL CARPET
CLEANING CO.

(May 11, 1931. Opinion and Decree.)

Lemle, Moreno & Lemle, of New Orleans, attorneys for plaintiff, appellee.

Harold J. Rayl, of New Orleans, attorney for defendant, appellant.

JANVIER, J. During the early part of June, 1928, plaintiff's wife delivered to defendants two rugs, with instructions to clean them and store them until needed in the fall. In October of that year they were ordered returned, and, upon being inspected after they were returned, were found to be almost, if not quite, worthless because of a large defect measuring from six to twelve inches in diameter in one and on account of the numerous small holes or defects in the other.

In his petition plaintiff claimed $562 as the value of the rugs. The district court rendered judgment in his favor for $505.08, the difference between that sum and the amount claimed apparently representing the estimate of His Honor below as to the depreciation in value resulting from the fact that the rugs, prior to the damage, had been in use almost two years, and that, therefore, their destruction did not entitle plaintiff to recover the full original value.

Defendants have appealed and contend that the judgment is erroneous for several reasons:

First, that the rugs were damaged prior to delivery to them for cleaning and that, therefore, the burden rested on plaintiff to show that additional damage was sustained while they were in defendants' possession.

Second, that if the rugs sustained damage while in defendants' possession, such damage resulted from the depredation of moths, and that, since defendants took all precautions which human ingenuity have so far devised for guarding against moths, if, nevertheless, such damage occurred, evidently it could not be guarded against, and is thus the result of overpowering or superior force.

Third, that when the rugs were accepted by defendants for cleaning, there was given to plaintiff, through his wife or servant, a document in which it was stipulated that defendants were "not responsible for damage by moths."

Fourth, that even if defendants are liable, the amount awarded is excessive, in view of the length of time the rugs had been in use and in view of the fact that they have been retained by plaintiff and should not be treated as totally worthless.

Defendants have been engaged in the business of cleaning and storing rugs for nearly thirty years and it is conceded that their officers and employees are experts and are thoroughly familiar with modern methods and have had vast experience in controlling the various entomological pests to which expensive rugs are heir.

It is also conceded that the moths, such as unquestionably attacked the rugs in question and caused the damage of which complaint is made, are slow in development, and that between the time of the laying of the egg in the rug and the time at which the hatched and developed moth commences his depredation, usually about six weeks elapse. Defendants contend that when the rugs were received in their cleaning establishment they remained in their uncleaned condition only about ten days and that, since the damage was discovered just before the commencement of the cleaning process and since such damage can be caused only after about six weeks' infestation by moths, the infestation must have taken place prior to the time the rugs were accepted by defendants.

Plaintiff meets this contention with the testimony of various members of his household to the effect that when the rugs left his residence they were in perfect condition and he maintains that, by the same process of reasoning as that adopted by defendants, the rugs must have been left by defendants in their uncleaned condition more than ten days, and, in fact, for sufficiently long for the infestation by moths to have taken place and for their development to have sufficiently progressed for them to have committed the damage. In other words, that the rugs must have remained uncleaned in defendants' establishment at least six weeks.

Counsel agree that the duty owed by defendants is that of a bailee for hire and that, if it can be shown that there was exercised the care and diligence with regard to the rugs which would have been exhibited by an ordinarily prudent person in the care of his own property, there is no liability. Nicholls v. Roland, 11 Martin (O. S.) 190; Hartford Fire Ins. Co. v. Doll, 5 La. App. 226; Meine v. Mossler Auto Exchange, Inc., 10 La. App. 65, 120 So. 533. In Ruling Case Law, vol. 3, pages

96 and 97, the obligation of the bailee is stated as follows:

"* * * Where the relation of bailor and bailee for hire or mutual benefit subsists, it devolves on the bailee to use ordinary care and diligence in the safeguarding of the bailor's property. If it is lost through a failure to observe such duty, he is answerable, but of course he is not responsible for any losses not occasioned by the ordinary negligence of himself or his servants."

If we were convinced that the rugs lay uncleaned in the defendants' place of business for only ten days, and if we felt that ten days is not an unreasonably long time under the customs and necessities of the rug cleaning business, we could not find defendants liable. But there is no doubt that the duty rests upon the bailee to show that he has given to the article left in his possession that degree of care which an ordinarily prudent person would give to his own property, and we feel that the proof tendered by defendants in this regard is deficient.

When the rugs were received by defendants the only evidence as to their condition is that given on behalf of plaintiff and it is to the effect that there was no blemish or defect of any kind in them.

We next find that when the cleaning process was commenced (which defendants say was ten days later, but in which statement we believe defendants are mistaken) the defects were so noticeable that the employee in charge of the cleaning called the condition of the rugs to the attention of two of the so-called officers of defendants.

In view of the testimony of defendants regarding the rather slow development of moths, we doubt that such a change could have occurred in so short a time as ten days. This impression would yield, of course, to positive proof, but such proof as to the exact time at which the cleaning took place is lacking. Defendants state that the rugs were cleaned in ten days, but they further state that their testimony in this regard results from their custom and because all rugs were cleaned in regular order, but, unfortunately, they are unable to produce their office records to show precisely when these particular rugs were placed in the cleaning machine. They kept records which would have shown this conclusively, but in spite of the fact that prior to the end of that year they knew of this claim and must have known of the importance of those records, they are unable to produce them, giving as their reason that they do not retain records after the end of a reasonable time. Then, too, since it was discovered just prior to cleaning that the condition of the rugs was such that to put them through the cleaning machine would almost certainly make them entirely worthless, it is reasonable to suppose that they would have notified plaintiff, instead of going ahead with the cleaning process.

If the cleaning had commenced within a reasonable time, we cannot but feel that, immediately upon discovering the defect, plaintiff would have been notified and he would have been consulted as to whether to continue the process or not. We cannot escape the view that the failure to notify plaintiff resulted from a consciousness of the fact that the delay which had permitted the moths to infest the rugs, or at least carry to a successful conclusion their previously commenced depredation, was chargeable to defendants' neglect.

The evidence shows that when rugs are first brought into the establishment for

cleaning, they are stacked in piles of about fifty to the pile, so that, in spite of precautions, it is evident that moths which may be in one rug will have, more or less, free access to others in the same pile.

The theoretical observations of defendants that moths were attracted to plaintiff's rugs by the foreign matter deposited therein in liquid form by an improperly trained canine are interesting, but cannot be seriously considered in view of the positive statement that no such occurrences had taken place.

The special defense that liability for damage by moths has been specifically stipulated against must yield to what we consider sufficient proof that the moth infestation resulted from the failure of defendants to properly and seasonably care for and clean the rugs. Such a stipulation cannot be permitted to have the effect of releasing from liability a bailee, whose negligence causes such damage. The purpose of such a stipulation is to relieve him from liability for results set forth if caused by circumstances beyond his reasonable ability to control.

We believe that the allowance made for depreciation resulting from prior use was as nearly accurate as is humanly possible of determination and that on the question of quantum the judgment should not be disturbed.

The judgment appealed from is affirmed at the cost of appellant.