80 So.2d 133 (1954)
Hilton C. HAZEL, Plaintiff-Appellee,
v.
J. Howard WILLIAMS, Defendant-Appellant.
No. 8257.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1954.
On Rehearing April 14, 1955.
*134 Albin P. Lassiter, Monroe, for appellant.
McHenry, Lamkin & Snellings, Monroe, for appellee.
GLADNEY, Judge.
J. Howard Williams, the defendant, appeals from a judgment which held him responsible for damages sustained by plaintiff's truck at defendant's service station in Monroe. The Home Indemnity Company of New York, an insurer of defendant, originally was made a party defendant but plaintiff's demands against it were dismissed upon an exception, from which ruling there was no appeal. This leaves Williams as the sole defendant.
The plaintiff, Hilton Hazel, a regular customer of the defendant, about six o'clock A.M. of December 22, 1953, drove his Chevrolet truck into Williams' station upon a suggestion of Austin B. Wilson, an employee of Williams, for the purpose of having the water drained from the radiator and engine block. The truck was thereafter to remain parked in the open on appellant's premises until Hazel should return a week later from a trip away from Monroe. The proposal of Wilson was made on the evening of December 21, 1953, after Hazel had instructed Wilson to put a solution of anti-freeze in the truck and Wilson told Hazel he thought the anti-freeze would leak out as there was a leak somewhere in the water system, the location of which he had been unable to find. Plaintiff left the truck in the care of appellant on the morning of December 22nd, after discussing the draining of the radiator and block with Williams, and returned on December 30th to find the engine block cracked. In the interim Monroe experienced temperatures of thirty-two degrees and below.
Plaintiff offered evidence to show that his truck, though of 1948 vintage with mileage in excess of 30,000, was in sound condition when placed with the defendant at his request for safekeeping, and asserts that had defendant exercised due care by promptly draining the water from the truck the loss would not have occurred by reason of water freezing in the engine block. The position of defendant was that William Thomas Lee, an employee, opened the petcocks placed on the radiator and engine block for the purpose of affording adequate drainage and Lee observed the water drain from the openings. Williams testified he personally closed the petcocks when the motor was started on December 30th.
Appellant insists before this court the evidence as presented in the record conclusively shows an absence of negligence on his part or of his employees, and that he has sustained the burden of proof required of a depositary under such circumstances.
The standard of care required of a depositary in Louisiana is comparable to that of a bailee, so styled in other jurisdictions. Counsel for appellant contends that the deposit was made without specific compensation and such a depositary is only required *135 to use the same measure of care as to the deposit as men of common sense and prudence ordinarily take of their own affairs, and is liable only for bad faith or gross negligence. This legal assertion is supported by the following citation of authority: Lafarge v. Morgan, 1822, 11 Mart., O.S., 462; Dunn v. Branner, 1858, 13 La.Ann. 452; Levy v. Pike, 1873, 25 La.Ann. 630; Hills v. Daniels, 1860, 15 La.Ann. 280.
Admittedly, Hazel was a regular customer of Williams and we may well infer the proposal of Wilson was of a business nature and for the purpose of keeping Hazel as a customer. In such an instance the deposit is not gratuitous but becomes an incident of the business in which the depositary makes a profit. Warren v. Geater, 206 Ark. 518, 176 S.W.2d 242; Cyclopedia of Automobile Law and Practice (Blashfield) Vol. 7, sec. 4666. The obligation of Williams in terms of the deposit, we think, must therefore be governed by the applicable provisions of Articles 1908, 2937, and 2938 of the LSA-Civil Code. The measure of care toward the deposit required by the codal articles is that "expected from a prudent administrator" as expressed in Article 1908, and presupposes "the same diligence in preserving the deposit that he uses in preserving his own property", as stated by Article 2937. Article 2938 says the provision of Article 2937 is to be rigorously enforced, inter alia, "where the deposit has been made by the request of the depositary."
Where the depositor or bailor has proved injury he thereby establishes a sufficient prima facie case against the depositary or bailee to put him on his defense. The rule is stated in Corpus Juris Secundum thusly:
"* * * and hence, where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes the bailee's negligence or other fault to be the cause, and casts on the bailee the burden of showing that the loss was due to other causes consistent with due care on his part, this rule being regarded as an application of the principle of res ipsa loquitur, and if the bailee does not sustain such burden the bailor becomes entitled as a matter of law to a verdict in his favor.
"The effect of this modern rule is not to shift the ultimate burden of proof from bailor to bailee, but merely to shift the burden of proceeding or going forward with the evidence; the ultimate burden of establishing negligence is on the bailor and remains on him throughout the trial.
"In order to throw the burden of evidence on the bailee it is sufficient that the bailor has shown damage to the bailed article that ordinarily does not happen where the requisite degree of care is exercised.
"* * * but the bailee may overcome this presumption by showing that the loss occurred through some cause consistent with due care on his part, in which case he is entitled to the verdict unless the bailor affirmatively proves to the satisfaction of the jury that the loss would not have occurred but for the negligence of the bailee.
"* * * In any event, the presumption of negligence arising from the bailee's failure to return bailed property is rebutted by proof that the goods were lost or destroyed by causes beyond his control, as by an inevitable accident, and both fire and theft are ordinarily so classified as hereinafter will be seen."
8 C.J.S., Bailments, § 50, pages 343, 344, 345, 346; Wenar v. Kelley, 3 Orleans App. 87; Alex W. Rothschild & Co., Inc., v. Lynch, 1925, 157 La. 849, 103 So. 188; Scott v. Sample, 1920-1921, 148 La. 627, 87 So. 478; Woodward v. Royal Carpet Cleaning Company, 1931, 16 La.App. 555, 134 So. 443; Royal Insurance Company, Ltd. of Liverpool, England, v. Collard Motors, Inc., La.App.1938, 179 So. 108; Colgin v. Security Storage & Van Co., Inc., La.App. 1943, 15 So.2d 664, recalled La.App., 17 So.2d 478, am., 1945, 208 La. 173, 23 So.2d 36, 160 A.L.R. 1107; Luke v. Security Storage & Van Co., Inc., La.App.1946, 24 So.2d *136 692; Pacific Fire Insurance Company v. Eunice Motor Car Company, La.App.1946-1947, 28 So.2d 474, set aside La.App., 30 So.2d 441; Fidelity & Deposit Co. of Maryland v. Rednour, La.App.1950, 44 So.2d 215; Poydras Fruit Company, Inc., v. Weinberger Banana Company, Inc., 1938, 189 La. 940, 181 So. 452.
During the progress of the trial Mr. Wallace Henson, service manager for Lee-Rogers Chevrolet Company that made the repairs necessary to place the truck in good condition, testified the opening of the two petcocks should have drained all the water from the motor unless there was a restriction such as rust, trash or foreign matter. This evidence, possibly of a speculative nature, does indicate that even when the petcocks are fully opened all of the water would not drain from the motor if such a restriction exists. But in explanation of possible cause and effect, counsel for plaintiff pointedly directs our attention to the testimony of Lee as clearly showing that Lee did not open the petcocks on the truck until late in the evening of December 22nd, some twelve hours after the vehicle was left at the station by Mr. Hazel, and the minimum temperature was shown to be thirty-two degrees on that date. Lee did give this testimony and it is not disputed. This dereliction from duty, it is argued, caused the damage to the truck.
Despite this earnest contention, we are unable to affirm it with certainty from the evidence presently found in the record. Placed in evidence was data obtained from the C. A. A. weather station located at Selman Field in Monroe showing minimum temperatures recorded at that station as follows:

Date Minimum Temperature
___ ______________________
December 22, 1953 32 Degrees
December 23, 1953 22 Degrees
December 24, 1953 20 Degrees
December 25, 1953 28 Degrees
December 26, 1953 24 Degrees
December 27, 1953 34 Degrees
December 28, 1953 47 Degrees
December 29, 1953 45 Degrees
December 30, 1953 34 Degrees

The above is informative only as to the minimum temperature recorded on December 22, 1953, which was thirty-two degrees above zero. From this alone we are thus unable to determine whether the temperature was sufficiently low to cause the water in the engine block of the truck to freeze prior to the time the petcocks were opened about 6:30 o'clock P. M. on December 22nd. Moreover, if the temperature prior to 6:00 o'clock A. M. on December 22nd was thirty-two degrees for a sustained period immediately before Hazel left the truck, there is likelihood that ice formed within the block which might not drain and thus remain in the block during the subfreezing temperatures of December 23, 24, 25 and 26, 1953. This inconclusiveness of the evidence has caused us to fail to reach a satisfactory decision upon the issue of actionable negligence, and we are of the opinion justice requires that the case be remanded to the end that evidence, if obtainable, be adduced showing periodical recordings of the minimum temperatures from the nearest obtainable station, as hereinafter suggested.
Authority for this procedure is found in Code of Practice, Article 906, reading:
"But if the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law."
On the remand the district court shall hear and receive any competent evidence offered by either litigant relating to recorded temperatures during the twenty-four hour period of December 22, 1953, and especially between the hours of 6:00 o'clock A. M. and 6:00 o'clock P. M. After hearing such evidence the district court may reinstate the judgment previously rendered *137 by it or plaintiff's demands may be rejected. And from the court's decree the right of further appeal is reserved to the litigant adversely affected.
For the reasons assigned the judgment from which appealed is now reversed and set aside and the case is remanded for further proceedings according to law and consistent with the views herein expressed. Each litigant shall pay one-half of the costs of this appeal. All other costs shall await the final determination of the litigation.

On Rehearing
In our original decree a remand was ordered for the purpose of including in the record evidence considered essential for a correct determination of the case. The missing evidence made the subject of the remand has been supplied and both appellant and appellee filed a joint application for rehearing which was granted by the court. The additional evidence conclusively shows the temperatures were above freezing in Monroe from 11:28 P.M., December 21, 1953, to 11:28 P.M., December 22, 1953. It must be resolved, therefore, the engine block was in good condition when the vehicle was delivered to Williams at 6:00 A.M. on the morning of December 22, 1953.
In our original opinion we held the relationship between the parties with reference to the vehicle left in the custody of Williams required of the latter the standard of care stipulated by articles 1908, 2937 and 2938 of the LSA-Civil Code, and being that "expected from a prudent administrator", and which presupposes "the same diligence in preserving the deposit that he uses in preserving his own property."
Plaintiff has proven the engine block was in good condition when left at defendant's filling station on the morning of December 22, 1953, for the purpose of drawing the water from the engine block and storing the truck until plaintiff should return about a week later. Also shown is that during the interval freezing temperatures as low as twenty degrees were experienced and when plaintiff returned the engine block was found cracked from freezing. We are of the opinion the engine block would not have experienced such injury except through improper care by failing to properly drain the water therefrom. This dereliction of duty suffices to impose liability upon the depositary.
It follows from our conclusions that the judgment of the district court should be and is hereby affirmed and made the judgment of this court. It is further ordered that defendant pay all costs, including costs of this appeal.