JOHNSON, Respondent v. HANNA, Respondent and
BRIGHT, Appellant
(101 N.W.2d 830)

(File No. 9792. Opinion filed March 16, 1960)
Rehearing denied April 22, 1960

**Hanley, Costello & Porter,** Rapid City, for Defendant and Appellant.

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Plaintiff and Respondent.

**Thomas R. Lehnert,** Rapid City, for Defendant and Respondent.

HANSON, J. This is an action for damages to an automobile resulting from an alleged breach of an implied contract of bailment. The defendant, Floyd Bright, appeals from the verdict and judgment in favor of plaintiff.

Carl E. Johnson, owner of the damaged automobile, originally brought action against both the the defendant, Floyd Bright, owner of a gas station, and his employee, Monte Hanna. The complaint alleged, in substance, that Floyd Bright operated a service station in Rapid City and Monte Hanna was one of his employees; that on January 23, 1958, plaintiff delivered his 1958 Edsel sedan to defendant Bright to be serviced, securely kept, and returned upon request; that on January 26, 1958, plaintiff requested re-delivery; that defendant did not take due care of or safely keep said auto but on the contrary the defendant Hanna,

after servicing, left the auto parked with the keys in the lock and returned about 2 a.m. and while in the scope of his employment converted the car to his own use; and by the careless, negligent, and improper conduct of defendant Bright and his agents and servants plaintiff's automobile was damaged beyond repair in the amount of $3,250.

Bright filed an answer containing, among other things, a cross claim against his employee, Monte Hanna, for contribution for any sum which might be assessed against Bright. Monte Hanna filed answers which contained, among other allegations, motions to dismiss both the complaint and the cross claim.

A pre-trial conference was held at which both defendants moved, or joined in a motion, to dismiss plaintiff's complaint upon the grounds:—(1) it failed to state a claim upon which relief could be granted and (2) it commingled or misjoined causes of action for breach of contract, negligence, and tort. Considerable discussion followed between court and counsel as to the nature of plaintiff's cause of action. In the course of this conference counsel for plaintiff indicated his intention, or election, to relay upon breach of contract for his cause of action. We refer to the pre-trial record to show the action taken thereafter:

"* * * The Court: In view of the statement made by Mr. Lynn, being in substance that the action is for damages for breach of contract of bailment, the motion to dismiss the Complaint on the grounds that several causes of action are improperly joined, is denied.

"Mr. Lehnart: At this time the defendant Hanna would like to move the Court to dismiss the Complaint against him on the grounds, and for the reason it fails to state a cause of action on contract against the defendant Hanna, or any cause of action as far as that is concerned.

"The Court: Motion will be granted. * * * *

"Mr. Lenhert: I will so move to dismiss the cross-complaint, no cause of action.

"The Court: Motion will be granted.

"Mr. Porter: The court in doing this has determined there is not a statement of two counts or two causes of action in the Complaint.

"The Court: That is correct.

"Mr. Porter: Then the allegations going to the actions of Hanna are considered by the Court as surplusage allegations, that he converted the car to his own use and (allegations) touching on his negligence.

"The Court: Yes. * * *"

■ The primary purpose of our pre-trial procedure is to simplify and narrow issues for trial. This worthwhile objective was accomplished in the present case we believe by (1) the elimination of all claims and causes of action against Hanna and (2) the reduction and clarification of plaintiff's claim against Bright to a cause of action for breach of an implied contract of bailment. In this respect the pre-trial determination, in the form of an order which substantially conforms to the requirements of SDC 33.1003, operated as an amendment to the pleadings. Disregarding the averments of negligence and conversion, as surplusage, the complaint sufficiently alleges a cause of action for breach of an implied contract of bailment.

The evidence shows the plaintiff Johnson was a truck driver residing in Rapid City. He kept both his truck and automobile regularly serviced at Bright's service station and paid for the charges at the end of each month. Bright maintained parking lots on the east and west sides of his station for the convenience and use of his customers. Plaintiff ordinarily took advantage of this service by leaving either his truck or car parked on one of the lots for which no storage or parking fee was charged.

On January 23, 1958, plaintiff started on a trip to Milwaukee. Before leaving with his truck he parked his 1958 Edsel automobile on defendant's east parking lot with the

doors locked. He then handed the keys to Bright and instructed him, or one of his employees, to grease and change the oil.

Plaintiff was gone about three days. When he returned he found his car had been taken and wrecked by Monte Hanna. The accident occurred early the morning of January 26th on the highway between Tilford and Piedmont. Apparently Hanna had taken the car to Deadwood and on the return trip fell asleep and ran into a bridge. Plaintiff denied giving Hanna permission to so use his car. The evidence showed the car was reasonably worth $3,350 before the accident and had a salvage value of $400 afterwards.

■ ■ Johnson made out a prima facie case when he presented evidence showing (1) delivery of the automobile to defendant for servicing, (2) its value, (3) defendant's failure to return the automobile in good condition upon demand and (4) the damages resulting from failure to redeliver. Under the circumstances it was unnecessary for plaintiff to plead or prove he paid, or offered to pay, defendant for servicing the car because (1) plaintiff was a credit customer, and (2) when the car could not be redelivered "it was unnecessary to make tender as a condition precedent to (his) right of action. The law does not require the doing of a vain thing. Agricultural Ins. Co. v. Constantine, 144 Ohio St. 275, 58 N.E. 2d 658, 665.

■ When plaintiff established a prima facie case the law created a presumption in his favor that the loss was caused by defendant's neglect or other fault. The burden of going forward with the evidence then shifted to defendant to show freedom from fault or that the loss was due to other causes consistent with due care on his part. Carty v. Lemmon Auto Co., 72 S.D. 559, 37 N.W. 2d`454. We do not believe defendant sustained that burden here.

■ There was some evidence introduced tending to show (1) that Hanna had plaintiff's permission to drive the automobile at the time of the accident, and (2) it was common knowledge plaintiff allowed several of defendant's em-

ployees, and other friends, to drive his car. These were controverted issues of fact which were fairly submitted to the jury and resolved in plaintiff's favor.

Bright offered no evidence to explain or justify his failure to redeliver the automobile. There is no clear evidence in the record showing how, where, when or from whom Hanna obtained the keys or possession of the car. Neither Hanna nor Robert Drake, defendant's night attendant on duty when the car was taken, testified. There was furthermore no evidence of defendant's due care to prevent or guard against the unauthorized use of keys or cars parked at his station.

■■ The relationship between plaintiff and defendant was that of bailor and bailee. Carty v. Lemmon Auto Co., 72 S.D. 559, 37 N.W.2d 454. It is generally held that when an owner leaves his car at a garage or service station for repairs or service the owner of the garage or service station becomes a bailee for hire. 24 Am.Jur., Garages, Parking Stations, and Liveries, § 16; Hazel v. Williams, La.App., 80 So.2d 133; Powell v. A. K. Brown Motor Co., 200 S.C. 75, 20 S.E.2d 636. "A bailment is not gratuitous, though nothing is paid directly by the bailor, where it (is) a necessary incident of a business in which the bailee makes a profit". Vol. 7 Blashfield, Cyclopedia of Automobile Law and Practice, § 4666. The privilege of parking at defendant's station did not, therefore, create a gratuitous bailment. It was a service rendered by defendant to his customers as an inducement to patronize his station. "A service station operator renders many services to automobile owners for which he makes no specific charge, such as wiping windshields, filling radiators and inflating tires, but these services are not entirely gratuitous. The cost thereof to the station owner is taken into consideration by him when he fixes the prices of gasoline, oil and other commodities that he sells and actually collects for from his customers." Warren v. Geater, 206 Ark. 518, 176 S.W.2d 242, 244. This is in accord with our statutory provisions which define a gratuitous bailment or "deposit" as a "deposit for which the depositary receives no

consideration beyond the mere possession of the thing deposited", SDC 60.0101(5); and "A deposit not gratuitous is called storage. The depositary in such case is called a depositary for hire." SDC 60.0101(6).

■ When a bailor-bailee relationship is established the following contractual obligations arise by implication of law: (1) the bailee will not use the bailed property, or permit it to be used, for any purpose, without the consent of the bailor, SDC 60.0102(9); and (2) the bailee will safely keep the property and redeliver it upon demand. Hawkins v. Hubbard, 2 S.D. 631, 51 N.W. 774.

■ As this is not an action in tort plaintiff was not obligated to plead or prove that Hanna was acting for defendant within the scope of his employment at the time of the accident. The question of a master's liability for the tortious acts of his employee is not involved. The issue is whether or not a defendant bailee for hire is responsible for breach of the bailment contract for failure to redeliver the automobile upon demand. The general rule is "that a bailee for hire ordinarily owes to the bailor a duty for the safe return of the subject of the bailment, the breach of which he cannot excuse by showing merely that at the time of its loss or injury, his servant in charge thereof was using it for his own purposes (without his consent), or in violation of instructions. The reason usually given for this rule is that the duty of safe return is one imposed by the bailee's contract, from which he cannot, by any conduct of his own alone, much less by shifting the responsibility to his servant, release himself, and that the liability in such a case grows out of the fact that the bailee has failed to do the thing he agreed to do, rather than, as in tort, out of the theory that the servant is acting for the master." 6 Am.Jur. (Rev. Ed.), Bailments, § 224. For the application of this general rule to this particular type of relationship see 24 Am.Jur., Garages, Parking Stations, and Liveries, § 18; 6 Am.Jur. (Rev. Ed.), Bailments, § 266; 7A Blashfield, Cyclopedia of Automobile Law and Practice, § 5026, p. 552; Annotation, 43 A.L.R. 2d 404.

■ The term bailment imports "the delivery of personal property by one person to another in trust for a speci-

fic purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it". 6 Am.Jur. (Rev.Ed.), Bailments, § 4. Possession of the property by the bailee is essential to the creation of a bailment. Defendant contends that essential element is lacking here because plaintiff's roommate, Dick Brandstedt, had a second set of keys to the automobile and permission to drive it. If defendant's contention is sound, an automobile could rarely be the subject of a valid bailment. Seldom, if ever, are all the keys to a car delivered to the bailee when left for storage, parking, repairs, or service.

A contract of bailment may be either written or oral. It may be express or implied from the relationship existing between the parties and the property. An implied contract of bailment is never formally executed and its creation and terms must of necessity be governed by general custom, usage, and practice. So it is with the bailment of an automobile. It is ordinarily presumed that when the owner parks and locks his car, and retains the key, possession and control remain in the owner and the relationship of bailor and bailee is not established. The inference is otherwise when the owner delivers his car to another for parking, storage, repairs, or service together with the key. See Feay v. Miller, 72 S.D. 185, 31 N.W.2d 328. It would be a matter of defense for defendant to show that plaintiff's automobile was removed from his possession, through no fault of his, by virtue of the second set of keys. No such showing was made.

We have considered defendant's numerous other assignments and find no error.

Affirmed.

All the Judges concur.