(58 South. 505.)

No. 18,503.

GIBBONS v. YAZOO & M. V. R. CO.

(March 11, 1912. Rehearing Denied May 6, 1912.)

*(Syllabus by the Court.)*

1. CARRIERS (§ 140*)—CARRIAGE OF GOODS— TERMINATION OF LIABILITY.

A shipper must take possession of his goods within a reasonable time after notification by the carrier of their arrival, and, where he fails to do so, the carrier after the lapse of a reasonable time becomes liable only as a warehouseman for their loss.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616; Dec. Dig. § 140.*]

2. CARRIERS (§ 140*)—CARRIAGE OF GOODS— TERMINATION OF LIABILITY.

Because a carrier is in a pool with other carriers to act as a warehouseman, ultra vires of its charter, the shipper cannot set up its ultra vires acts to change the nature of the liability imposed upon it by law. If the facts are such as to show that the carrier is acting as warehouseman at the time of the loss of the goods, the owner cannot escape the relationship of bailee for hire which he has himself helped to create by pleading that the carrier was doing something not incident to its business as a carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616; Dec. Dig. § 140.*]

3. WAREHOUSEMEN (§ 24*)—LOSS OF GOODS— LIABILITY.

A warehouseman, in order to escape responsibility for the loss of goods intrusted to its care, must show that the loss did not occur through its fault; but where it is shown that the usual precautions have been taken to prevent a fire, which is not shown to have occurred through any fault of the warehouseman, it is not liable for the loss due to the fire.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 111–123; Dec. Dig. § 24.*]

4. BAILMENT (§ 31*)—LOSS OF GOODS—LIABILITY.

Showing that a watchman employed by a bailee was addicted to drink, without showing that his failing had any causal connection with a fire which caused a loss of goods, is not such a showing as will entitle the bailor to recover of the bailee for the goods.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec. Dig. § 31.*]

5. APPEAL AND ERROR (§ 934*)—REVIEW— PRESUMPTIONS.

There is a presumption of correctness in favor of the judgment of a trial judge who has heard the witnesses testify, and this presumption will not be disregarded without a clear showing of error in the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 934.*]

Appeal from Civil District Court, Parish of Orleans; W. B. Sommerville, Judge.

Action by John T. Gibbons against the Yazoo & Mississippi Valley Railroad Company.

From a judgment for defendant, plaintiff appeals. Affirmed.

McCloskey & Benedict, for appellant. Hunter C. Leake and Gustave Lemle (Blewitt Lee and C. L. Sivley, of counsel), for appellee.

BREAUX, C. J. This is an action to recover the sum of $2,925.98, less a credit of $185.48, from defendant railroad company.

Hay and oats were consigned to plaintiff over defendant's railroad. They were received here by the railroad company and stored in one of its warehouses in the city. They were destroyed by fire in the afternoon on Thanksgiving Day, November 26, 1908.

Plaintiff was timely notified after the merchandise had been received. It was left in the warehouse for his accommodation.

The district court rejected the demand, and plaintiff appealed.

The first ground presented involves a question of law: Is the defendant company liable for the loss as a carrier or a warehouseman?

In the second place, the ground pressed upon our attention is whether the fire occurred through the gross negligence of defendant's watchman, for whose negligence plaintiff averred the defendant is responsible?

Plaintiff in this connection charges that the watchman was, to defendant's knowledge, a drunkard.

Another of plaintiff's grounds is that the water supply was not what it should have been, and, as a result, the hose could not be used to prevent destruction of the property; that one of the sheds, particularly shed No. 28 in which the hay was stored, was overfilled.

Plaintiff further, in substance, alleged that defendant is liable as carrier and not as warehouseman.

The plaintiff's contention is that at the time of the fire the defendant held the hay

as a carrier subject to all the responsibility of a carrier for the safe delivery of the goods, while defendant's contention is that it held the hay as a warehouseman.

By admission of record it appears that one car of the hay transported to and placed in defendant's warehouse had been retained in defendant's warehouse about a year.

It is also admitted that plaintiff could have taken the hay from the defendant's shed at any time he pleased previous to the fire, but that the railroad company suffered the hay to remain there indefinitely so long as plaintiff chose to pay storage.

It was also admitted that the defendant company never at any time took out a license, either from the city or the state, as a warehouseman, public or private.

The position on the part of the plaintiff is, as first above stated, that the defendant's liability is that of a public carrier because the property remained in its possession and control as public carrier; and, in the second place, that, under a pool agreement among the various trunk lines to engage in the storage business, this storage was not incidental to the business of defendant, and for that reason defendant's liability was that of a common carrier; that storage was conducted ultra vires of the company's authority under its charter; and that damages for loss by fire were to be gauged by their status as carriers.

[1] We take up for decision, in the first place, plaintiff's contention that, as defendant had possession of the property, its liability was that of a carrier.

We have not found that the first proposition is supported by authority; the hay, it follows, was held by defendant as a warehouseman.

A shipper must take possession within reasonable time of his goods at point of destination, or, if they are left with the carrier in care of its warehouse, the railroad is held

as a warehouseman and not as a common carrier.

For loss of goods after the liability of the carrier has terminated, the shipper must look to the warehouseman for redress if the latter is itself in the business of warehousing goods. Manhattan Rubber Shoe Co. v. Railroad Co., 9 App. Div. 172, 41 N. Y. Supp. 83.

After a reasonable time has elapsed for the consignee to remove freight, the carrier does not stand in the relation of carrier, but of an ordinary bailee for hire. Hutchinson on Carriers (2d Ed.) § 686. See to the same effect section 685.

We have had occasion to consider the question in another case. Although not very similar, it has analogy. William T. Hardie Co. v. Vicksburg, S. & P. Ry. Co., 118 La. 258, 42 South. 795, in which this court said:

"The liability does not cease on the arrival of the goods at their place of destination and their delivery to a warehouse. * * * The liability becomes exclusively that of a warehouseman."

[2] Although the warehouse may be under the management of a pool in which different railroads are concerned, it does not on that account change the liability as between shipper and the railroad when the former chooses to avail himself of whatever warehouse accommodations may be offered by the latter; in other words, although the railroad may not be conducting a business incidental to its business, as between the two before mentioned, the liability does not change on that account.

Measured by the responsibility of a warehouseman, we have to determine: What is the responsibility of a warehouseman?

Reverting to plaintiff's position that defendant kept a warehouse ultra vires of its charter, we will state that, however much defendant may have departed from the purpose of its organization, this court will not undertake to fix its liability as a railroad under the terms of its charter as contended for by plaintiff. That is, that defendant having acted as a warehouseman, it still remains liable as a railroad. Defendant had all the responsibilities of a warehouseman; it incurred the liability of a warehouseman.

We do not find a decision or authority anywhere for holding otherwise than that the liability is to be gauged by the occupation followed; that is, the defendant was engaged in warehousemen's business—its liability is that of a warehouseman.

We have reconsidered the decision in State v. Southern Pacific Co., 52 La. Ann. 1829, 28 South. 372. The issues are quite different in that case, in this, that the parties are entirely different and the right of parties. In addition, we note that the opinion on rehearing modified the view expressed and renders it evident that there are circumstances under which there might be some responsibility incurred as a warehouseman in particular cases mentioned. We do not intend to place a construction upon that decision different from heretofore, but only refer to it to add that a railroad in this state that has conducted a warehouse business as between it and its customers who have recognized its business, the latter (the customers who seek the accommodation of these warehouses) cannot be heard to state that the liability is greater than that of the warehouseman.

[3] The next question is: What is the extent of the liability of a warehouseman?

A warehouse keeper must show that the loss occurred without its fault. Schwartz v. Baer, 21 La. Ann. 601. See, also, Century Digest, "Warehouseman," vol. 48, § 27.

We next have to consider whether or not defendant was negligent. The decision of the question depends upon the facts.

Plaintiff complains of one of the watchmen. His general averment is that defend-

ant employed neglectful servants while knowing that they were incompetent, and that this was the cause of the destruction of the merchandise.

[4] It is true that there is testimony to the effect that one of defendant's watchmen was not always sober. The evidence is not unanimous upon the subject. Quite a number of witnesses testified that this employé was often sick; had stomach troubles; it rendered him irritable and cross; in consequence he frequently had quarrels and was disagreeable. But quite a number of witnesses state that, nevertheless, he was a careful man and sought to protect the property in his charge. On the day of the fire, he absented himself about 1 o'clock, and some one else took his place. The fire was discovered about 3 o'clock.

We have not found wherein he was negligent or wherein his absence was the cause that the fire was not sooner discovered. There were other watchmen present, policemen and clerks, and they seem to have been sufficiently alert; at any rate, it does not seem that this absent watchman would have changed things. The fire was discovered in the hay in the center of the warehouse inside. Something was said about spontaneous combustion and different theories advanced; but, of course, they are mere theories, and no one knows with certainty what was the cause of the fire.

The charge is also made by plaintiff that the apparatus to extinguish the fire was not in good condition. This is not sustained by the evidence. They were all in working order; the only trouble was, when the hydrant was turned, the water did not flow.

We do not understand that this was the fault of the defendant. If it was, the testimony fails to prove the fact.

The evidence is that the sudden flames would not have been put out even if there had been ample water from the first.

Ordinary care devolved upon the warehouseman. The hose were attached to the city hydrants. We are not inclined to the opinion—unless it be evident that there was negligence—that a warehouseman is liable because the waterworks of the city of New Orleans, then operated by the Waterworks Company, failed to timely supply water. The testimony is that defendant's employés at this warehouse drilled twice a month in order to see that everything was in order.

The witness John McGuirk testified:

"We pulled the hose down all right, but the smoke was so thick that we couldn't stand; we had to run away."

He is corroborated by witness Goodrich—the fire apparatus was in good order, but they could not work them because of the heat of the flames. They also testify as to the presence of two watchmen before and during the fire.

[5] A number of witnesses testified in the cause, about 20. Their evidence was heard in the district court. The trial judge Sommerville, who heard the witnesses, arrived at the conclusion that there was no liability. A presumption sustains the judgment until it satisfactorily appears that an error has been committed.

We have carefully gone over the whole of the testimony and have not found the negligence charged. Therefore there is left to us only the alternative ; that is, to affirm the judgment.

For reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.