Security Storage and Van Co., Inc., operates warehouses in the City of New Orleans. Plaintiffs, Roland Luke and his wife, stored certain furniture and effects in one of these warehouses and paid the storage charges exacted therefor. Sometime later, at about 5 o'clock in the morning, the building was practically destroyed by a fire which originated inside it. The goods of plaintiffs were burned.
They brought this suit against Security Storage Van Co., Inc., alleging that the loss had resulted from negligence on the part of the Security Company or of its employees, and that the value of the articles destroyed was, $855. They prayed for judgment *Page 693 
for that amount against the said company.
Defendant admitted that the articles had been stored in the warehouse and had been destroyed by fire, but it denied all liability for the loss.
It averred that the fire had not resulted from negligence on its part or on the part of its employees and it further asserted that by the terms of the contract of storage it had been expressly relieved from all liability for any loss in connection with the said bailment.
In the alternative, it averred that if it should be held that there is any legal liability in it, that liability should be limited in amount because of a special stipulation in the contract of bailment. Defendant further denied that the value of the articles stored was as great as alleged by plaintiffs.
There was judgment in favor of plaintiffs for $500 and defendant has appealed.
The record shows that in connection with the bailment there were executed certain documents, such as a storage proposal, a receipt for the goods and a warehouse receipt, and in these documents there are certain clauses which, if effective, would have the effect of relieving defendant of all liability or at least of restricting that liability to a purely nominal amount.
Before entering upon a consideration of the question of the effect of these stipulations and whether they are legally enforceable, we think it best to first determine whether, under the facts shown, defendant is liable at all.
Plaintiffs maintain that there is liability and they base their contention on the assertion that defendant has not shown itself free of negligence.
It is true that defendant has not been able to show the cause of the origin of the fire. The record shows that during the very early morning it was discovered that a fire had originated within the building on the third floor, the cause of which fire has never been developed.
[1] We know of no rule of law in this State which requires that a bailee for hire, in order to escape liability for loss by fire of goods entrusted to it, must show exactly how the fire originated. All that is required is that the bailee must show that it was free of negligence; that it did all that a reasonably prudent person would have done in looking after the goods entrusted to it.
[2] We need not cite a host of authorities to show that a bailee is not responsible merely because the goods which formed the object of the bailment have been destroyed. The proper rule is stated in Poydras Fruit Co. v. Weinberger Banana Co.,189 La. 940, 181 So. 452, 455: "* * * when the bailee shows that the property was destroyed by fire, and there is nothing in the showing made by the bailee to indicate that there was fault or negligence on his part, the burden of proof rests upon the bailor to show that there was fault or negligence on the part of the bailee. McCullom v. Porter, Thomas Foley, 17 La. Ann. 89; Gibbons v. Yazoo M. V. R. Co., 130 La. 671, 58 So. 505; Scott v. Sample, 148 La. 627, 87 So. 478; Austin v. Heath,168 La. 605, 122 So. 865; Cau v. Texas Pacific Ry. Co.,194 U.S. 427, 24 S.Ct. 663, 48 L.Ed. 1053."
[3] Another excellent statement of the rule established in Louisiana is to be found in La. Digest Annotated, Vol. 7, page 327, "Warehouses": "A warehouseman, in order to escape responsibility for the loss of goods intrusted to its care, must show that the loss did not occur through its fault; but where it is shown that the usual precautions have been taken to prevent a fire, which is not shown to have occurred through any fault of the warehouseman, it is not liable for the loss due to the fire. Schwartz v. Baer, 21 La. Ann. 601, cited — Gibbons v. Yazoo, etc., R. Co., 130 La. 671, 58 So. 505."
Where property is stored in a warehouse and the warehouseman (bailee) cannot return it because it has been destroyed by fire, the duty is on the bailee to show that he was free from negligence. In doing this it is not always necessary that he show the exact cause of the fire.
[4] Where such a fire occurs, and it is confined within the interior of the premises of the bailee, it is its duty to show all facts of which it has or ought to have knowledge and, as we said in Royal Insurance Co. v. Collard, La. App., 179 So. 108, 110, "these facts must not involve negligence on [its] part."
[5] It may well be that in many instances, in order to show its own freedom from fault, it will be necessary that the *Page 694 
bailee show the exact cause, but where it is possible that the fire originated without fault on the part of the bailee, it need not show that exact cause, provided that without showing it, it can nevertheless establish its own freedom from fault.
As was said in Warren Arthur Smadbeck v. Heling Contracting Corporation, 2 Cir., 50 F.2d 99, 101: "Accidental fires occur without negligence, and the occurrence of the fire does not justify the inference of negligence. In the absence of some explanation as to the origin of the fire and evidence tending to show that it was within the power of the appellant (chatterer) to have avoided its occurrence by the exercise of reasonable care, no presumption of negligence is raised so as to justify the imposition of liability."
In Poydras Fruit Co. v. Weinberger Banana Co., supra, the Supreme Court held the defendant liable because it was unable to show the cause of the fire, but there the court said that that particular fire could not have occurred "without negligence or incompetence."
[6] But, since as we have already said, accidental fires may occur without negligence, the mere fact that a fire did occur does not in itself conclusively establish negligence on the part of the bailee.
Counsel for plaintiffs, in support of the contention that there was negligence on the part of defendant, relies very largely on his assertion that the building which was used as a warehouse was very old and that, therefore, it was a firetrap. The record, it is true, does show that the building was a very old one, but it also shows that it was situated in that part of New Orleans in which there are a great many very old buildings and it shows, too, that this particular building was no older than a great many others, and that its condition, despite what counsel says, was not such as to justify its being regarded as a fire hazard or firetrap. It is shown that at some time before the occurrence of the fire, a few bricks from the cornice on one side of the building had fallen and that police had barricaded the street until the necessary repairs could be made. But the record shows, too, that these repairs were made promptly and that the barricade was removed. Mr. Frank P. Rivarde, the Assistant Fire Chief of the Fire Department of the City of New Orleans, investigated the fire and reached the conclusion that the cause of the fire was unknown. He was asked, "Did you ever have notice of any sort that this building had been condemned as a fire hazard?" and he answered, "I had." But we are quite sure that he did not mean to say that it had been condemned as a fire hazard, but merely that he knew that the police had barricaded the building and required that the repairs be made, for he followed the testimony we have just quoted with a statement that it was hard to say just when that occurrence had taken place, but that it had been some time before the fire "when it was barricaded", and a little while later he was asked, "In your capacity as Assistant Fire Chief, was that building condemned as dangerous or as a fire hazard?" and he answered, "No, sir".
Mr. Hynes of the Mercier Realty Development Company, owners of the building, testified that the building had been occupied by manufacturing concerns with fairly heavy machinery before the present tenant moved into it and that it always had been inspected by city authorities and by the city electrician and that nothing was found wrong with it. He said that at no time had any complaint ever been made concerning the condition of the building or its electrical equipment except on the one occasion when the bricks had fallen and that on that occasion the repairs had been made at once.
[7] The record shows that, except for the fact that the building was old, it was entirely suitable for the purpose for which it was being used. The floors and walls were strong and adequate and there was nothing about it to justify the conclusion that it was a fire hazard or a firetrap. It was used almost entirely for the storage of furniture and the defendants did not require that it be kept open constantly. In other words, they operated their business from another building and opened this building only when it was necessary to put in or take out stored articles. The building was equipped with a master switch by means of which all electrical equipment could be turned off at night and Mr. Wolchansky, the president of defendant company, testified that so far as he could tell, this master switch had been made use of on practically all occasions and that on the night preceding the fire, this switch had been thrown, so that there was no electrical current going into the building at the time of the fire. He said, of course, that that night was just an ordinary night so far as *Page 695 
he knew at that time, but that he recollected that the switch was thrown off on that night. The defendant did not maintain a watchman in the building at all times during the night, but it did employ a night watchman service and under its contract a night watchman was required to pass by the building at least once each hour during the night and to call some one in authority if anything unusual was discovered.
[8] Under all of these circumstances we do not see that it can be said that there was any negligence on the part of defendant. It is true that there was no sprinkler system in the building, but we do not think that it can be said that the mere failure to install such a system constitutes negligence.
We reach the conclusion that, unless it is to be held that the mere unexplained occurrence of such a fire justifies the presumption of negligence, defendant here should not be held liable.
The conclusion to which we have come makes it unnecessary for us to consider whether the special stipulations to which we have referred would have been legally effective as relieving the defendant of liability or as limiting the amount of its liability.
The judgment appealed from is annulled, avoided and reversed and the suit of plaintiffs is dismissed at their cost.
Reversed.
WESTERFIELD, J., absent. Takes no part.