KENNON, Judge.
The defendant is the operator of a bonded warehouse in the City of' Alexandria, Louisiana. Alleging that on August 14, 1946, he had stored with defendant some sixty odd cases of whiskey of assorted brands, for which he had paid the regular storage rates and charges, and that ten of these cases, of a value of $479.32, were lost, plaintiff filed suit to recover this amount from the defendant. The petition recited that Miss Harriet Powars, Secretary-Treasurer of the defendant corporation, notified plaintiff in November, 1946 that the warehouse had been burglarized and the ten cases of whiskey belonging to plaintiff had been lost, and that Miss Powers, as a duly authorized agent and majority stockholder of the defendant cor *766 poration, acknowledged liability and promised that payment would be made for the loss of plaintiff’s merchandise. The particular acts of negligence set forth included: The failure to provide strong and theft proof outer doors to the warehouse and to provide a safe place of inner-storage in the warehouse to protect the whiskey from pilfering by defendant’s own employees.
Defendant admitted the acceptance of the whiskey for storage; that ten cases were lost; denied any negligence on the part of its agents or employees, and denied that any promise to pay for the whiskey had been made. Asserting that the warehouse in which plaintiff’s merchandise was stored was safeguarded by proper locks and bars and that the loss was not occasioned by any fault on its part, defendant prayed that plaintiff’s demands be rejected.
After trial the District Court rendered judgment in favor of plaintiff as prayed for. Defendant has appealed.
Defendant operates a rather large storage warehouse adjacent to one of the railroads in the City of Alexandria. On August 14, 1946, it issued to plaintiff six negotiable warehouse receipts for sixty odd cases of whiskey of different brands (including the ten cases which were not returned). Within the warehouse the cases of whiskey were stacked in a smaller room or pen made of packing box or beaver board type of material and extending six to eight feet upward from the floor. The door to this pen was secured by a hasp and padlock. There was an open space of six feet or more between the. top walls of the pen and the ceiling of the. warehouse.
On a Sunday morning in November, 1946, Miss Harriet Powars, upon reaching the warehouse, found the back door open and a padlock on same broken off. With the police officers who answered her call, she made a survey of the inside of the warehouse. They found the door to the whiskey “pen” undisturbed. Both police officers testified that they saw no indication that anyone had entered the door of the pen or climbed over its sides. One officer, when asked if he attempted to look over the top of the whiskey pen, stated: “No sir, I couldn’t. If I remember correctly I did look up to see. if I could find anything around the door where anybody had gone over but I couldn’t find anything.” Miss Powers testified that she made an inventory of the whiskey at a later 'date and found that ten cases were missing.
An examination of the record as a whole leaves us uncertain as to whether or not the ten cases were lost on the night before Miss Powars found the broken locks and open doors to the warehouse. Miss Powars testified that the padlock and hasp securing the door to the whiskey pen were undisturbed. The policemen who came and made a thorough investigation found not the slightest indication that anyone had gone over the walls of the pen. Had a burglar entered the warehouse and stolen the whiskey the night before, doubtless he would have necessarily forced the lock on the door to the whiskey pen, or would have placed a ladder or boxes of merchandise of some sort against the pen walls in order to climb over same and bring out the whiskey. The lock to the whiskey pen was not disturbed. There is no evidence that there was a ladder in the warehouse. It is hardly logical to believe that, had the burglar made a temporary stile or some means of climbing over with the merchandise or material in the warehouse, he would have carefully removed same and placed each article back in its former position, nor is it likely that an outside burglar would have contented himself with only ten cases of the more generous supply contained in the pen.
The fact that there had been a prior burglary of the defendant warehouse and that the burglar had left a note in Miss Powars’ typewriter that the job was not one by her employees, tends to throw suspicion upon these employees.
The defendant corporation employed from five to eight laborers about the warehouse, and while Miss Powars testified that she locked the warehouse when she went home to lunch, it is obviously true that these workmen, singly or collectively, had occasion to be in the warehouse at times when Miss Powars or her principal assistant were busy in the office or temporarily absent ” from the premises. Miss Powars on cross-examination at first denied *767 that the warehouse had been broken into previous to the November, 1946 burglary. The evasive character of her testimony is shown by the following extract from the record:
“Q. On several occasions just prior to November 26th, hadn’t your place been entered? A. No, sir.
“Q. Didn’t you inform Mr. Bradford that it had been so entered and on one occasion the person who had entered it had left a note on your desk stating that the person who had entered it was not an employee of yours? A. No, I don’t remember. I’m not going to answer the question because I do not remember.
“Q. Do you recall finding any note on your desk referring to any breaking and stating that the person who had broken in was not— (interrupted) A. I take it back. They broke in the safe and robbed the safe.
“Q. Did they leave a note? A. Yes sir, on the typewriter.
“Q. What did the note say? A. I don’t remember' — -I think it said the employees weren’t responsible.”
From all of the circumstances, we conclude that the record does not establish that the ten cases of whiskey for which plaintiff has sued were lost through burglary as contended by the defendant corporation. Of course there remains the possibility that those who broke the outside locks removed the ten cases of whiskey, but the clear preponderance of the evidence is that the cases were lost through pilfering by defendant’s own employees, or others who had access to the warehouse in the ordinary course of business.
We now examine the law relative to the liability of a warehouseman for goods lost under these circumstances. On the back of the warehouse receipts introduced in evidence is printed a long list of “standard contract terms and conditions” adopted by representatives of shippers, warehousemen, and others at a general conference in Washington, D. C. in 1926 and approved by the United States Department of Commerce. Section 10(a) of the standard terms is as follows: “Liability — Sec. 10(a) The responsibility of a warehouseman, in the absence of written provisions, is the reasonable care and diligence required by law.”
This measure of the liability of the warehouseman is almost identical in substance with the Louisiana act on the same subject, Section 21 of Act 221 of 1908, which we quote: “A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary for any loss or injury to the goods which could not have been avoided by the exercise of such care.”
The liability of a bailee under the Louisiana statute and jurisprudence is set forth at length in the rather late case of Luke v. Security Storage & Van Co., Inc., La.App., 24 So.2d 692, 693 (quoted in defendant’s brief), which we quote below:
“We need not cite a host of authorities to show that a bailee is not' responsible merely because the goods which formed the object of the bailment have been destroyed. The proper rule is stated in Poydras Fruit Co. v. Weinberger Banana Co., 189 La. 940, 181 So. 452, 455: ** * * when the bailee shows that the property was destroyed by fire, and there is nothing in the showing made by the bailee to indicate that there was fault or negligence on his part, the burden of proof rests upon the bailor to show that there was fault or negligence on the part of the bailee. McCullom v. Porter, Thomas & Foley, 17 La.Ann. 89; Gibbons v. Yazoo & M. V. R. Co., 130 La. 671, 58 So. 505; Scott v. Sample, 148 La. 627, 87 So. 478; Austin v. Heath, 168 La. 605, 122 So. 865; Cau v. Texas & Pacific Ry. Co., 194 U.S. 427, 24 S.Ct. 663, 48 L.Ed. 1053.’
“Another excellent statement of the rule established in Louisiana is to. be found in La. Digest Annotated, Vol. 7, page 327, Warehouses’: ‘A warehouseman, in order to escape responsibility for the loss of goods intrusted to its care, must show that the loss did not occur through its -fault; but where it is shown that the usual precautions have been taken to prevent a fire, which is not shown to have occurred through any fault of the warehouseman, it is not liable *768 for the loss due to the fire. Schwartz v. Baer, 21 La.Ann. 601, cited—Gibbons v. Yazoo, & M. V. R. Co., 130 La. 671, 58 So. 505.’
“Where property is stored in a warehouse and the warehouseman (bailee) cannot return it because it has been destroyed by fire, the duty is on the bailee to show that he was free from negligence. In doing this it is not always necessary that he show the exact cause of the fire.”
In an examination of the case before us and applying its facts to the above quoted statute and rules adopted by the Louisiana courts, we find that the plaintiff has not shown any fault or negligence on the part of the defendant insofar as the locks on the outside doors are concerned or insofar as defendant’s failure to provide a night watchman constitutes negligence.
On the question of whether the defendant exercised due care when it stored the whiskey in the open pen, we reach a different conclusion. The cases of whiskey were comparatively light weight (less than fifty pounds) and could easily be carried or passed over the low walls which enclosed them. The fact that the defendant corporation placed the whiskey in the pen indicated the realization that valuable light weight articles—particularly such tempting ones as whiskey—should not be placed in open warehouse storage.
The only testimony as to what the “usual precautions” taken by other warehousemen in regard to similar merchandise was that of Mr. J. M. Ellington, who testified that whiskey in his warehouse was placed in a completely enclosed room which was not only padlocked, but further secured against stealing or inside pilfering by the use of a railroad type seal which was inspected from time to time so that if the room should be entered even by someone who might gain access with a key, the fact of entrance could be discovered and prompt remedial action taken.
Miss Powars testified that she owned, in 1946, sixty per cent, of the stock of the defendant corporation and that she was in active charge of the business. She denied that she had promised to pay plaintiff for the loss of the merchandise. However, the testimony of plaintiff that she did make such a promise is amply corroborated by disinterested witnesses. While we have found that the record establishes the negligence of the defendant corporation and that plaintiff need not rely on this admission, we find that she did promise to pay plaintiff for the loss in question.
We further find that Miss Powars was a majority stockholder and in complete charge of the storage business and warehouse of the defendant corporation, and that a prima facie showing has been made of her authority to bind the corporation by her admission of liability, made in the usual course of business and in conformity with her apparent authority. Defendant made no affirmative showing to the contrary.
The judgment appealed from is affirmed, with costs.
TALIAFERRO, J. dissents and assigns written reasons.