129 So.2d 258 (1961)
FIREMAN'S FUND INDEMNITY COMPANY
v.
Joseph SIGARD and Louis George et al.
No. 106.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1961.
Rehearing Denied May 15, 1961.
Certiorari Denied June 20, 1961.
*259 Porteous & Johnson and Parnell J. Hyland, New Orleans, for plaintiff and appellant.
Drury & Lozes, Felicien P. Lozes, New Orleans, for defendants and appellees.
Before JANVIER, McBRIDE and SAMUEL, JJ.
McBRIDE, Judge.
Fireman's Fund Indemnity Company, a fire insurer, as the subrogee of Joseph Simon brings this suit for the loss arising from the destruction by fire of Simon's 1957 Plymouth automobile of a value of $2,200, while it was undergoing repairs in the establishment of Sicard Motors, 1601 Airline Highway, Jefferson Parish. The fire which occurred on October 30, 1957, about 4:30 a. m., is alleged to have resulted from negligence attributable to said Sicard Motors. The defendants are Sicard Motors, its component partners, and their public liability insurer, all in solido. Another defendant was impleaded by supplemental and amended petition, but he is no longer a party to the suit.
The petition ascribes certain specified acts of negligence to Sicard Motors and its employees, such as, said defendants permitted trash, debris, oily rags and inflammable substances, etc., to accumulate in its repair shop, all of which constituted a fire hazard; that Sicard Motors and its employees had been notified by the fire marshal to correct said condition but they failed to do so. In the alternative, it is alleged that as the facts in connection with the fire are peculiarly within the knowledge of Sicard Motors and its employees, who had possession and control of the automobile, the doctrine of res ipsa loquitur is applicable, and the same is specially pleaded.
After a trial on the merits, the lower court rendered judgment in favor of defendants dismissing the demands made by plaintiff which has appealed.
Sicard Motors occupied the middle third of a wooden building owned by H. Raziano called a "warehouse," the building measuring about 50 feet by 600 feet and adjoining that part thereof occupied by Sicard *260 Motors, and removed but 10 feet therefrom, was a two-story building called an "apartment" also owned by Raziano. The latter building was unoccupied, and it appears clear from the record that it was the subject of unauthorized entry and served as a hangout for hobos and vagrants. The main line of a railroad was located a short distance away.
The warehouse building had been vacant for a period of six years. Previously it had been utilized by a woodworking or cabinet making establishment with the result there existed an accumulation of sawdust on the ground beneath the flooring. Leo A. Miremont, the chief witness for plaintiff, after inspection of the warehouse in 1956, while it was unused, in his capacity of Deputy State Fire Marshal, notified Raziano to either demolish the building or make necessary repairs, the nature of which we do not know. However, in accordance with Miremont's recommendations it appears Raziano did demolish two large brick incinerators.
At any rate, in April 1957 Raziano leased a part of the warehouse to Sicard Motors which was engaged in the business of repairing and painting automobiles, and shortly after their occupancy Miremont again appeared on the scene. In connection with its business pursuits Sicard Motors used rags, grease, and inflammable liquids, including oil and gasoline, and as is to be expected, from time to time there would be an accumulation of debris, consisting of rags, empty cans, paper, and other rubbish on the premises. It seems about once a week the place was cleaned, the litter being swept through a trap door in the floor of the building which was raised several feet off the ground. Miremont states he complained to Sicard Motors that the premises were hazardous and directed that iron sheet or plate be placed beneath automobiles upon which brazing or welding was being performed and that the oily rags be stored in metal containers, and further, that several fire extinguishers be installed.
Subsequently, on a date not shown, Miremont returned and noticed that sheet metal had been placed on the wooden flooring for protection against sparks which might fall from torches; he also saw several fire extinguishers in the establishment. He seemed satisfied. Miremont found nothing unusual in the fact that debris had been permitted to accumulate as he stated:
"The debris, the trash, was still in the building, which is sort of normal in a repair shop, because you have to be using oily rags, and such as that, all the time."
It might be mentioned here that Sicard Motors had planned and was prepared to move from the warehouse to another location the very day on which the fire occurred.
This case was consolidated for the purposes of trial in the lower court with several other actions, arising from the fire, instituted by persons who had sustained losses through the destruction of property they had placed in the custody of Sicard Motors. One of these multiple plaintiffs was George Mick who, incidentally, was an employee of Sicard Motors and who testified that on the night preceding the fire, he was in the premises of Sicard Motors engaged in repairing some of his own property for his own account and that he quit working at 11 o'clock. Mick says before leaving he noticed no indication of any fire and in the usual course he turned off all electricity and locked the premises. No one was in the building at the time. So far as the record shows Mick was the last person to be in the establishment.
The alarm of fire was turned in at 5:15 a. m. and the Kenner Volunteer Fire Department responded. The conflagration was not extinguished for several hours. The part of the warehouse occupied by Sicard Motors and the adjoining apartment house were completely destroyed.
Upon Miremont's arrival at the scene the fire had not been extinguished. That part *261 of the apartment house nearest the repair shop of Sicard Motors, as well as the latter, were still in flames.
Miremont states he interviewed numerous persons but no one was able to say what was the origin of the fire, and after the embers had cooled, he made an investigation of the ashes from which he could not determine the cause of the fire, but he thought it was "apparently" due to spontaneous combustion caused by the conditions in the building, namely the accumulation of trash, paper, sawdust, oily rags and inflammable liquids. He felt sure the fire had started in the automobile repair shop where the paints were kept.
A reading of the record convinces us that Miremont's opinion that spontaneous combustion caused the fire is merely conjecture of the rankest sort. He based his conclusion that the fire started in the paint shop because of the intensity of the heat at that point. The repair shop as a whole, as well as the apartment building, was totally consumed as is attested to by the photographs in the record, and how Miremont could tell that the fire was of greater intensity at one point than another is something we do not comprehend and which he did not attempt to explain. Miremont simply did not know the cause of the fire. To use his own words:
"We couldn't tell at the time of the investigation, because the fire had done too much damage. In other words, you couldn't dig into the debris and sort enough to find out how it started."
When interrogated about the possibility of the fire having had its origin in the apartment building, Miremont answered that it could not have started there because the building was unoccupied. Still he gave no explanation. It occurs to this court that the fact the apartment building was vacant and was frequented by vagrants and trespassers would be all the more reason why there is a strong possibility the fire could have emanated therefrom. Miremont admitted under questioning that if it be a fact the fire had started in the apartment building and then spread to the quarters of Sicard Motors, the oily substances in that establishment would have burned with the intense heat he had mentioned.
Plaintiff has neither proven that the fire started in that part of the warehouse occupied by Sicard Motors, nor that its employees or partners were guilty in connection with the occurrence. There was no showing of a causal connection between the hazardous conditions which Miremont said existed in the auto repair shop and the fire.
Raziano, the owner of both the warehouse and the apartment building, appeared as a witness, and from his testimony it appears he has been a large and extensive owner of realty through the years. He stated that he intended to tear down a part of the building after Sicard Motors had moved. Raziano gave a history of having had several fire losses in the past. He was the stockholder in a company which operated a moving picture theater in Kenner which burned, the loss being $125,000; there was an $80,000 loss in his Airline Lumber Company and he also experienced a fire in a lumber mill in Garyville; moreover, the Airline Supply Company sustained damage to the extent of $135,000 by fire.
The plaintiff insists that the doctrine of res ipsa loquitur is applicable in this case and contends that under the doctrine whereas Simon's automobile was in the possession of Sicard Motors as bailee and under its sole control the onus rested on the defendants in order to exculpate themselves from liability, to show freedom from negligence in connection with the loss of the car. It is argued that such showing was not made.
According to LSA-C.C. art. 2937 the depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property. This means *262 nothing more or less than that the depositary must use ordinary care such as is expected of a prudent man. Livaudais v. Lee She Tung, 197 La. 844, 2 So.2d 232; Holder v. Lockwood, La.App., 92 So.2d 768; Paterno v. Kennedy The Cleaner, 18 La. App. 649, 138 So. 531.
The bailee is not an insurer and there are many authorities to the effect that a bailee is not responsible merely because the goods which formed the object of the bailment have perished by fortuitous event.
Poydras Fruit Co., Inc. v. Weinberger Banana Co., Inc., 189 La. 940, 181 So. 452, 455, decided by the Supreme Court, states the prevailing rule:
"* * * when the bailee shows that the property was destroyed by fire, and there is nothing in the showing made by the bailee to indicate that there was fault or negligence on his part, the burden of proof rests upon the bailor to show that there was fault or negligence on the part of the bailee. McCullom v. Porter, Thomas & Foley, 17 La.Ann. 89; Gibbons v. Yazoo & M. V. R. Co., 130 La. 671, 58 So. 505; Scott v. Sample, 148 La. 627, 87 So. 478; Austin v. Heath, 168 La. 605, 122 So. 865; Cau v. Texas & Pacific Ry. Co., 194 U.S. 427, 24 S.Ct. 663, 48 L.Ed. 1053."
All that a warehouseman need do in order to relieve himself from responsibility for the loss of goods entrusted to him is to show that the loss did not occur through his fault, and where it is shown that the usual precautions have been taken to prevent a fire and it is not shown the fire occurred through any fault of the warehouseman, he is not liable for any loss arising therefrom. Schwartz v. Baer, 21 La. Ann. 601; Gibbons v. Yazoo & M. V. R. Co., 130 La. 671, 58 So. 505.
A concise and excellent statement of the law with reference to the applicability of the doctrine of res ipsa loquitur in cases where there is a loss of property by fire is found in Mr. Wex Malone's article "Res Ipsa Loquitur and Proof by Inference," 4 L.L.R. 70, 80-81, as follows:
"* * * Where bailed goods, for example, are destroyed by a general fire of unexplained origin on the bailee's premises, no inference of negligence arises despite the unusualness of the occurrence and the fact that the bailee is commonly regarded as being in exclusive possession and control of both the premises and the goods. The fact remains that the defendant's situation with respect to the occurrence was not such as to exclude a large number of inferences as to the cause of the fire all pointing away from responsibility on his part. The peril of fire from almost unlimited sources is too omnipresent to permit of such free conjecture.
"If it be shown, however, that the bailed property was an automobile in the defendant's garage, and that it was destroyed by fire which originated at a time when the defendant or his employee was actively at work upon the car, and further, if it appears that the flame was restricted in area to the immediate vicinity of the vehicle itself the doctrine might properly be applied. The narrow area of the conflagration excludes many inferences which otherwise would present themselves, and the defendant's close physical relationship to the vehicle serves to subordinate still other explanations as to how the fire might have arisen. In short, the requirement of physical control by the defendant appears to mean no more than that the defendant's situation with respect to the accident must be such as to leave little room for competing inferences with respect to the cause of the mishap."
See Niagara Fire Insurance Company v. Shuff, La.App., 93 So.2d 325.
*263 On plaintiff's behalf are cited several cases, none of which we deem apposite to the question before the court. We have not been cited to a single case, and we know of none, holding that when the bailee has shown the bailed goods were destroyed in a general fire of unknown origin and there is nothing in the showing to indicate fault on the bailee's part that the bailor may be successful in his suit without proving fault or negligence on the bailee's part. In every instance where the doctrine of res ipsa loquitur has been invoked in cases involving the loss of goods by fire, the court was dealing with facts different from those before us. Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447; Austin v. Heath, 168 La. 605, 122 So. 865; Scott v. Sample, 148 La. 627, 87 So. 478; Niagara Fire Insurance Co. v. Shuff, supra; Leigh v. Johnson-Evans Motors, Inc., La.App., 75 So.2d 710; Pacific Fire Ins. Co. v. Eunice Motor Car Co., Inc., La.App., 46 So.2d 363 (on application for rehearing, La.App., 47 So.2d 403); Luke v. Security Storage & Van Co., Inc., La.App., 24 So.2d 692, 693; Royal Ins. Co., Limited of Liverpool, England v. Collard Motors, Inc., La.App., 179 So. 108. In each of these cases there was a limited fire by which a single article was damaged or destroyed, while under the bailee's control, and, in fact, the article was being worked on by the bailee. In none was the object of the bailment damaged or destroyed by a fire which consumed the entire building in which it was located.
The happening of the fire itself did not raise an inference of negligence on the part of Sicard Motors, and the doctrine of res ipsa loquitur is therefore inapplicable. Plaintiff has failed to bear the burden which rested upon him of proving the fault of the bailee.
Therefore, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.
Affirmed.