■HOOD, Judge.
B. F. Trappey’s Sons, Inc., the owner of a 'tractor and trailer unit, and its collision insurer, Liberty Mutual Insurance Company, instituted this suit for property damages allegedly caused by the negligence of the defendant, Woolman and Allen, in attempting to remove plaintiff’s tractor and trailer unit from a ditch. After trial on the merits, the trial court concluded that defendant had negligently caused and was liable for damages to the tractor amounting to the sum of $789.53, but that it was not responsible for the damages alleged to have been done to the trailer. Judgment was rendered accordingly, and plaintiffs have .appealed. Defendant has answered the .appeal praying that the judgment be reversed and that all of plaintiffs’ demands be rej ected.
The evidence shows that at about 2:30 a. m. on October 19, 1960, a truck tractor and trailer unit owned by plaintiff, B. F. Trappey’s Sons, Inc., while being driven in .a westerly direction on U. S. Highway 90 in Jefferson Davis Parish, ran off the south side of that highway into a ditch. The 'tractor and trailer “jackknifed” as it left ■the road, the trailer then turned over on its left side in the ditch, and as it did so, it • caused the tractor to be lifted completely off ■the ground. When the vehicles came to rest the trailer was lying on its left side in the ditch, in about three feet of mud and water, .and the tractor was suspended in the air with its front end pointing upward, the tractor being held or supported in that position by the “fifth wheel” and pin, the latter being the parts of those vehicles used in coupling the tractor to the trailer.
The trailer was a large van-type vehicle, the top and sides of which were constructed of sheets of stainless steel. At the time the accident occurred it was carrying a 34,000-pound load of canned foods. When the trailer turned over on its side, the cargo •shifted inside the van and came to rest principally on the left side of the trailer. The testimony of the witnesses and the photographs which were introduced in evidence convinces us that as a result of the accident itself, and before any salvage operations were begun, at least the left side, top and back of the trailer were badly damaged.
A few hours after the accident occurred a State Trooper called the wrecker service of defendant, Woolman and Allen, and defendant was engaged to remove the tractor and trailer from the ditch. Clifford Berk-ley, an employee of defendant and the operator of its wrecker, succeeded in disengaging the tractor from the trailer and getting the tractor back on the highway. He attempted to get the trailer back on its wheels and out of the ditch, but his efforts to do so were unsuccessful. Plaintiffs contend that defendant, through its employee Berkley, conducted the salvage or towing operations in an improper and negligent manner, and that as a result of his negligence the tractor and trailer were damaged.
The duty which the operator of a wrecker service owes to his customers has been likened to that of operators of parking lots, garages and service stations who keep or service the vehicles of others. The latter have been held to be compensated depositaries, in which capacity they are required to exercise the same degree of care in handling the vehicles left in their custody as they would use in handling and protecting their own property; They are not insurers of the vehicles left in their care, and they are liable for damages to such vehicles only if it is shown that the damages were caused by their negligence. Stell v. Briggs, La.App. 2 Cir., 69 So.2d 82; Fireman’s Fund Indemnity Company v. Sigard, La.App. 4 Cir., 129 So.2d 258 (Cert. denied) ; Miller v. Hammond Motors, La.App. 1 Cir., 40 So.2d 29; Calvert Fire Insurance Company v. Grotts, La.App. 4 Cir., 136 So.2d 836 (Cert. denied); LSA-C.C. Articles 2937, 2938.
We think the operator of a wrecker service who is engaged to move, salvage or *760 tow a wrecked or disabled vehicle owes a duty to the owner of such vehicle to exercise the same degree of care in handling it as he would be expected to use in moving, salvaging or towing his own vehicle under the same circumstances. The operator of such a service is not liable for all damages caused by his actions in attempting to move or tow the vehicle, but he is liable for such additional damage to the vehicle as may be caused by his negligence in failing to use the reasonable or ordinary care which is expected of a prudent man to avoid unnecessary further damage. In this case, therefore, plaintiffs are entitled to recover only those damages which are shown to have been caused by the negligence of defendant in failing to exercise reasonable or ordinary care in its efforts to move, salvage and tow the disabled vehicles.
The evidence is conflicting as to what transpired immediately after Berkley arrived at the scene of the accident, about 7:30 that morning. Two employees of B. F. Trappey’s Sons testified that he first attached a cable to the tractor and attempted to pull it at right angles to- and in the direction of the highway, and that in doing so, he bent the frame of the tractor. They further stated that he then moved his wrecker in front of the tractor, re-attached his lines to it and pulled it forward causing the tractor to pivot on the “fifth wheel” and to fall on its left side in the ditch, after which maneuver it was uncoupled from the trailer, put on its wheels and towed in. Berkley denies that he ever attempted to pull the tractor toward the highway. He testified that his first act after arriving at the scene was to attach a cable to the tractor and pull it forward, causing it to pivot on the fifth wheel and fall on its left side in the ditch. He states, however, that “as it come down the left rear wheel dug into the soft mud and it come down almost like a slow motion picture. The wheel digging in the mud slowed down the fall.” The tractor was then pulled forward about four feet, sliding on its left side, so that it could be uncoupled from the trailer. After being detached from the trailer, it was then up-righted and towed to a garage. He further testified that he did not bend the frame of the tractor in any of his operations, but that the frame had been bent, apparently from the accident, before he arrived at the scene.
The trial court resolved the conflict in the evidence by accepting the testimony of the two employees of B. F. Trappey’s Sons that Berkley had first attempted to pull the tractor at right angles to the highway and in so doing had bent the frame of the tractor. Since the trial judge was able to observe the witnesses as they testified, he is in a better position than we are to determine their credibility, and we therefore defer to his judgment on this issue of fact. The trial judge found that the defendant was liable in damages for bending the frame of the tractor and also- for allowing the tractor to fall on its left side in the ditch. The cost of repairing the damages to the frame and to the left side of the tractor were found to be $789.53, and judgment accordingly was rendered in favor of plaintiffs for that amount.
We agree with the trial judge that-defendant was negligent in bending the frame of the tractor by attempting to pull it at right angles to the highway. Even Berkley, who strongly denies that he did any such thing, admits that such a procedure would cause damage to the frame and would not assist in removing the vehicle from the ditch. The evidence shows that the cost of repairing this damage to the frame is $180.00, and we find that defendant is liable to plaintiffs for that amount.
We, however, are unable to agree with the trial judge in his conclusion that defendant is liable for the damages done to the cab of the tractor when Berkley caused it to fall on its left side, and then to be dragged forward in the mud about four feet in order that it could be uncoupled from the trailer. Berkley, who is experienced in the operation of wreckers, testified that *761 such a procedure was the most practical and best one to use in removing the tractor, and no other expert testified as to a better method of salvaging it. At the trial one of plaintiff’s employees, a truck driver, suggested that a dragline could have been used to lift the truck tractor out of its position, and that damage to the left side of that vehicle might thus have been avoided. Berkley pointed out, however, that the expense of renting a dragline, with a truck to haul it and the building of a board runway so that it could get into the proper position, would be great, and that that expense alone would exceed the cost of repairing all of the damages now being claimed for the tractor. The method used by Berkley occasioned relatively minor damages to the left side of the truck, and we are convinced that it was the most practical and best procedure which could have been employed under the circumstances. We conclude, therefore, that except for his negligence in bending the frame as above, set out, defendant’s agent exercised reasonable care in removing the tractor from its wrecked position in the ditch and in towing it in for repairs. In our opinion, the trial judge erred in holding defendant liable for the damages to the left side of that vehicle occasioned by these operations.
Turning now to the alleged damages to the trailer, the evidence shows that after the tractor had been removed from the ditch Berkley attached cables to the right rear spring and to the upper part of the fifth wheel plate of the trailer, and pulled in an effort to upright it, but without success. He then pulled on the front end of the trailer causing it to pivot on its side and move into a position parallel to the highway so that it could be uprighted. Upon his suggestion, the State Trooper then called the wrecker service of Benoit Motor Company of Welsh, Louisiana, which company sent out two additional wreckers to assist in the salvaging operations. After a conference between Berkley, the operators of the Benoit wreckers and the State Trooper, it was determined that the best and most practical way to get the trailer on its wheels was to wrap cables around the front and rear ends of the van and for both wreckers to pull simultaneously on these lines. This was done, with defendant’s wrecker pulling on the cable attached to the front end of the trailer and the Benoit wreckers pulling on the rear cable. While these operations were being conducted a passing oil field winch truck was stopped by the State Trooper and it also attached cables to the trailer and pulled in an effort to upright it. As soon as the pulling operations were begun, however, it was determined that the cables were cutting into the top and right side of the van, so those efforts were immediately discontinued by those wreckers and the passing winch truck. A further conference between the operators of the wreckers and the Trooper resulted in a conclusion that the trailer would have to be unloaded before it could be salvaged. All of the wreckers and the winch truck then left the scene of the accident and defendant had nothing further to do with .the salvage operations. By the afternoon of the next day, plaintiff’s employees had unloaded about three-fourths of the contents of the trailer, and plaintiff then, with the assistance of a wrecker from Welsh and a tractor owned by plaintiff, successfully uprighted the partially loaded trailer and towed it in for repairs.
Plaintiffs contend that the operator of defendant’s wrecker was negligent, first, in attempting to upright the trailer by pulling on cables attached to the rear spring and fifth wheel plate, then in pivoting the trailer on its side to get it parallel to the highway, and finally, in attempting to upright the loaded trailer by the use of cables wrapped around the front and rear ends of that vehicle. They contend that because of defendant’s negligence in these respects the frame of the trailer was bent and the van was damaged beyond repair. The trial judge held that the evidence failed to establish any damage to the trailer which may have been caused by defendant’s employee, *762 and accordingly, plaintiffs’ demands for damages to the trailer were rejected.
While an examination of the trailer after it had been salvaged reveals that the frame was bent, the evidence does not show that the frame was damaged in any manner while defendant’s wrecker was at the scene of the accident. The evidence, in fact, convinces us that the frame could not have been bent by any of the operations which were conducted by Berkley or by the other wreckers or the winch truck which assisted in these attempts while defendant’s wrecker was present.
With reference to the damage to the van of the trailer, the evidence shows that the pulling or towing on cables wrapped around the front and rear ends of the trailer did bend and cause some damage to' the top and right panels of the van. The operators of the wreckers and the State Trooper, however, anticipated that there would be some damage to the van by this operation, but after considering and discussing other alternatives, they concluded that “since the left side of the trailer, the top and the front section and the rear doors were already drawn, or would have to be replaced anyhow, that would be the cheapest thing to do.” Although some damage was done to the van in an unsuccessful attempt to salvage the trailer, there is nothing in the record to' show that the method which the operators of the wreckers chose in making these attempts was unwise, impractical, contrary to accepted practices in the business of conducting salvaging operations, or was different from the method which defendant would have used had the trailer been its own property.
Considering all of the facts, we think the trial court correctly concluded that the evidence fails to establish that the operator of defendant’s wrecker was negligent in failing to exercise the reasonable and ordinary care expected of a prudent man in attempting to move and upright the trailer. Plaintiffs’ demands for damages to the trailer, therefore, were properly rejected.
Defendant contends that it is not responsible in damages to plaintiffs for any amount, because his wrecker operator was-a “borrowed employee” of the State Police. We find no merit to this argument. Although defendant’s wrecker was called to the scene of the accident by a State Trooper, it is apparent that this was done as a convenience to the owner of the wrecked vehicles. Defendant responded to the call with the thought it was voluntarily performing a needed service for the owner of the vehicles and with the expectation that it would be paid for such service by the owner. We think such an agreement was clearly implied. There is nothing in the record' to show that defendant’s wrecker was under the control of the State Trooper, or that the-operator of that wrecker was under any restrictions as to the method which should be used in removing the vehicles.
After this accident occurred, Liberty Mutual Insurance Company paid to" B. F. Trappey’s Sons, Inc., the sum of |515.09, representing the loss or damage to the truck tractor involved in such accident. In consideration of that payment,. B. F. Trappey’s Sons subrogated the insurer to all of its rights for damages up to the-amount of that payment. In view of this-subrogation, and since the total amount for which the defendant is liable is less than-the amount of the claim assigned, the judgment of the trial court must be amended by-awarding judgment in favor of Liberty Mutual Insurance Company and against defendant for the principal sum of $180.00, being the damages done to the frame of the tractor.
For the reasons herein assigned, therefore, the judgment of the trial court is-amended and recast to read as follows:
It is ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of plaintiff, Liberty Mutual Insurance Company, and against defendant partnership, Woolman and Allen, in the principal sum of $180.00, together with legal interest thereon from date of judicial demand' *763 until paid, and for all costs of this suit. All other demands of plaintiffs are rejected.
As thus amended, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Amended and affirmed.